## BOLTON vs. GARDNER.

Where fraud or other circumstances are charged in the bill, to avoid a release, the defendant pleading the release must, by proper negative averments in his plea, deny the allegations of fraud, &c. and must support his plea by a full answer and discovery as to every equitable circumstance charged in the bill, in avoidance of such release.

As to matters which are not alleged to be the defendant's own acts, or to be within his personal knowledge, it is sufficient, if the defendant in his negative averments denies the facts charged, upon his belief only; but he must so frame his averments that the complainant can put the facts in issue by a replication.

It is sufficient, if the defendant in his answer in support of such plea, denies the equitable circumstances stated in the bill, according to his knowledge, information and belief.

If the defendant answers as to any matters covered by his plea, he overrules the plea.

Whether a trustee can support a release from his cestui que trust, founded upon a consideration grossly inadequate, although no actual fraud was intended? Quære.

Such trustee should, at least, be required to show, either that he was treating with the cestui que trust for a settlement at arms length, or that previous to receiving the release he gave the cestui que trust a fair statement of the amount of the trust property.

Where the complainant sues in *forma pauperis*, the costs upon overruling the defendant's plea, on the ground of its informality, are not to be paid to the complainant if the defendant finally succeeds in his defence.

An appellant is not allowed to prosecute an appeal as a poor person, but he must give security for costs; and therefore if he succeeds on the appeal, he is entitled to *dives* costs on the appeal, although he sued in *forma pauperis* in the court below.

THE bill in this cause was filed by the administratrix of J. Bolton, deceased, to obtain the distributive share of the decedent in the estate of A. McLachlan, his half brother. The bill charged that McLachlan died in January, 1819, leaving a large personal estate, and that the defendant D. Gardner, who married his sister, administered thereon ; that in February, 1821, Bolton received a letter from the defendant S. S. Gardner, a brother of D. Gardner, requesting him to call and see him relative to the estate of McLachlan ; that Bolton called accordingly, and S. S. Gardner told him he was entitled to some portion of the estate, and that as the agent of his brother, the administrator, he wished to settle it with him, and he referred him to S. Miller, the surrogate, for further information ; that Bolton called on Miller, who advised him that he was entitled to about seven or eight hundred dollars out of the estate of McLachlan, but that as the administrator was a liberal man, he thought it probable he would give him a thousand dollars ; that Miller offered to undertake the business and obtain the money for him for a fee of $50, to which Bolton agreed ; that a few days afterwards Bolton met Miller and S. S. Gardner, by appointment, at the office of the latter, where Bolton agreed to accept $1000 for his share of the estate of McLachlan ; and that he then executed a release or assignment of his interest therein to D. Gardner, on receiving $950, the remaining $50 being paid to Miller as his fee. The bill further charged that Bolton, at the time of executing the release and assignment, was wholly ignorant of his rights as one of the next of kin of McLachlan, and that he was also ignorant that Miller was the counsel of D. Gardner, which he subsequently ascertained to be the case ; that during the negotiation Bolton did not see any statement of the personal estate of McLachlan, nor was he informed of its value, or of his rights therein, either by Gardner, or by Miller, but that he was induced to sign the release and assignment by the representations made to him by S. S. Gardner the solicitor, and Miller the counsel of D. Gardner ; that if Bolton had known the amount of the personal estate of McLachlan, and of his interest therein, he would not have released such interest for $1000, which the complainant averred was less than one fifth of his just dis-

tributive share of the estate, and to which he was entitled as one of the next of kin. The complainant therefore insisted that the release and assignment were void, by reason of this fraud and imposition; and that she, as the personal representative of Bolton, was entitled to one fourth of the personal estate of McLachlan, deducting therefrom the $950 received from Gardner. The bill further stated, that D. Gardner had not filed an inventory, and that he had refused to exhibit to Bolton in his life time, or to the administratrix since his death, an account of the estate; that at the time of executing the release and assignment D. and S. S. Gardner and Miller well knew that $950 was not one fifth of the distributive share of Bolton in the estate of McLachlan; that they then also knew that Bolton was ignorant of his rights, and of the proportion of the estate to which he was entitled; and they did not produce or show to him any statement or inventory of the estate. The bill prayed that the defendant D. Gardner might set forth an account of the personal estate of McLachlan which had come to his hands as administrator, &c. and of the administration thereof; and that he might be decreed to pay to the complainant the distributive share of such estate to which she was entitled, as the personal representative of Bolton; and for general relief.

The defendant D. Gardner, as to so much of the bill as sought for a discovery or account of the estate of McLachlan, and of the administration thereof, and as to all the relief sought by the bill, pleaded in bar the release and assignment executed by Bolton, in February, 1821. He averred in his plea that it was not true, to his knowledge or belief, that Bolton, at the time of executing the release, was wholly ignorant of his rights as one of the next of kin of McLachlan; that Miller was not at that time his counsel; that Bolton was, according to his belief, informed of the value of the estate, and of his rights and interest therein; that the sum of $1000 was not less than one fifth of his distributive share of the estate to which he was entitled as one of the next of kin; that the release was not procured by the contrivance and management of S. S. Gardner and Miller, and by false and untrue representations; that it was not true that either the defendant S. S. Gardner or Miller knew, at the time of making the release, that

$950 was not one fifth of Bolton's share of the estate, or that it was far less than his distributive proportion thereof; or that they knew he was ignorant of his rights and of the proportion of the estate to which he was entitled. The defendant further averred in his plea, that *he could not state* whether S. S. Gardner and Miller produced and exhibited to Bolton any inventory or statement of the property at the time of the execution of the release; but that the defendant was informed and believed that S. S. Gardner did at that time state to Bolton and Miller the amount of the estate of McLachlan. There were also some other informal averments in the plea as to other matters stated in the bill.

The plea was accompanied by an answer, admitting most of the allegations in the bill relative to the original right of Bolton to a distributive share of the estate of McLachlan; and containing a general denial, according to the defendant's knowledge, information and belief, as to most of the circumstances stated in the bill, as evidences of fraud or imposition, to avoid the release. The defendant also denied, in his answer, that the sum of $1000 paid to Bolton on the execution of the release, was less than one fifth of his distributive share of the estate; and he alleged that according to his belief, it was fully equal to what he was rightfully entitled to. He also alleged that he filed in the office of the surrogate an inventory of the estate of McLachlan, in February, 1819; which inventory he averred to be in all respects just and true, except that after the filing of the inventory, he received eleven volumes of books and $132,81, belonging to the estate, which came to his knowledge after the filing of the inventory. He also denied that Miller was his counsel at the time of the execution of the release; but admitted he had since been informed, and that he believed Miller previous to that time had, as his counsel, signed a plea put in by him, the defendant, to a bill filed by Jane Garness relative to the estate; but that the name of Miller was affixed to the plea without the knowledge or approbation of the defendant.

Upon argument before the late vice chancellor of the first circuit, the plea was allowed; with liberty to the complainant to reply to the same within ten days, or in default thereof,

that her bill be dismissed. From this decision the complainant appealed to the chancellor.

*F. B. Cutting*, for the complainant.

*D. B. Ogden*, for the defendant.

THE CHANCELLOR. Several objections are made to this plea which are merely formal ; but the principal objection is that it is pleaded in bar to the discovery of what the complainant's counsel considers a material fact to destroy the defence arising out of the release and assignment of Bolton. I believe the answer is sufficiently full as to all the matters of the bill not professedly·covered by the plea. Whether the plea does not cover the discovery of some facts as to which the complainant was entitled to an answer, I shall presently consider. The rule which requires an answer in support of a plea, in certain cases, does not render it necessary that the defendant should deny positively, in the answer, matters of which it cannot be presumed he has any personal knowledge. Where fraud or other circumstances are charged for the purpose of avoiding a release, the defendant pleading the release must, by proper negative averments in his plea, deny the allegations of fraud, &c. and must support his plea by a full answer and discovery as to every equitable circumstance charged in the bill to avoid the bar. (*Mad. & Geld. Rep.* 64. 2 *Ves. & Beam. Rep.* 364.) But in the case of negative averments as to matters not alleged to be the acts of the defendant, or where, from the nature of the case, he cannot be supposed to have any personal knowledge of the subject, it is sufficient for him to deny the facts charged, upon his belief only. (*Drew* v. *Drew*, 2 *Ves. & Beam.* 159.) The defendant, however, must be careful so to frame his averments that the complainant may put the facts in issue by a replication. And where the negative averments in the plea are permitted to be made upon the belief of the defendant, it will be sufficient for him, in the answer in support of such plea, to deny the equitable circumstances stated in the bill, according to his knowledge, information and belief only.

One objection which is urged by the complainant's counsel to the form of the plea in this case, is that some of the averments therein professing to negative the charges in the bill, are not direct and issuable, but are involved and argumentative. I am inclined to think this objection is well taken. One of those averments commences thus : " And this defendant further avers, that for the reasons in his answer particularly set forth, he cannot say whether or not," &c. concluding with two or three involved exceptions, and embracing in a parenthesis another distinct averment of ignorance. This mode of denying an allegation in the bill might not perhaps be deemed objectionable in an answer, where every allegation not admitted by the defendant is put in issue by the formal traverse at the close of the answer. But it is bad in a plea where the negative averments must tender an issue, directly.

Another objection to the plea is that it is overruled by a part of the answer. The defendant, by his plea, objects to answering any allegations in the bill which call for a discovery as to the situation or amount of the estate of McLachlan, which has come to his hands as administrator ; yet he does answer in part as to those matters. He alleges, in substance, that the inventory filed by him in the office of the surrogate contains a just and true account of the estate which had come to his hands, except eleven volumes of books and $132, which came to his hands afterwards. He also states that the $1000 paid Bolton at the time of making the release was fully equal to what he was rightfully entitled to, and was not, as alleged in the bill, less than one fifth of his just distributive share of the estate. If it was necessary or proper to put these allegations in an answer in support of this plea, then it was improper to plead the release in bar of the discovery as to the amount of the estate. The defendant should have pleaded in bar of the relief merely, and have given a full discovery as to the actual amount of the estate. If the allegation in the answer, that the amount paid to Bolton at the time of the execution of the release was not less than one fifth of his distributive share of the estate, and that it was fully equal to what he was rightfully entitled to, was not necessary to support the plea, it overrules the whole plea, and constitutes a double bar. (2 *Sim. & Stu. R.* 281.) Taking this answer to be true, Bolton received

1832.

Bolton
v.
Gardner.

from the defendant his full distributive share of the estate, and all he had any right to claim. This of itself is a full defence to the suit, and to the whole relief asked for by the bill.

Independent of these objections to the plea, in point of form, I think the complainant was entitled to a full discovery as to the actual amount of the personal estate of McLachlan. We have before seen that the party pleading a release which the complainant seeks to impeach upon equitable circumstances, must, in his answer supporting the plea, make a full discovery as to every material circumstance relied on to avoid the bar. One equitable circumstance relied upon here is, that Bolton understood from Miller that his share of the estate was less than $1000, whereas the complainant alleges it was more than five times that amount, and that this fact was then known to the defendant and his solicitor. If this was so, although Miller himself was probably misinformed as to the amount, I am not prepared to say that a trustee can be permitted to support a release from his cestui que trust founded on such a gross inadequacy of consideration ; although there was no actual fraud intended. I think, in such a case, the defendant should be required to show that the parties were treating for a settlement at arms length, or that he gave the cestui que trust a fair statement of the amount of the property, so far as was necessary to enable him to act understandingly in relation to his rights. Although the defendant denies knowledge of the amount of property charged in the bill, the complainant has a right to know what the property was, and when it came to the defendant's hands, to enable the court to see whether the allegation is true.

I think the vice chancellor erred in allowing this plea ; and his decision must be reversed, with the costs of this appeal. The plea is to be overruled, but without prejudice to the right of the defendant to insist upon the release and assignment, in his answer, as a bar to the relief sought by the complainant's bill.

As the complainant is prosecuting her cause before the vice chancellor in forma pauperis, the question whether she is to receive costs upon the argument of the plea before the vice chancellor, must be reserved until the hearing ; but they are not to be allowed, if the defendant succeeds in his defence.

This court will not encourage the prosecution of suits in forma pauperis, merely for the purpose of obtaining the costs of interlocutory proceedings, if there is no reasonable hope of succeeding on the merits. As the complainant cannot prosecute an appeal as a poor person, and is also obliged to give security for the costs of the adverse party in such a case, it is reasonable that she should recover *dives* costs for the proceedings on the appeal.