### In re COLLIER.

(District Court, W. D. Tennessee. April 15, 1899.)

**1.** BANKRUPTCY—VOLUNTARY PETITION—PAUPER'S OATH.

Under Bankruptcy Act 1898, § 51, requiring the clerk to collect the fees of officers in each case before filing the petition, except where the petition of a voluntary bankrupt is "accompanied by an affidavit stating that the petitioner is without and cannot obtain the money with which to pay such fees," such affidavit is not conclusive of the poverty of the petitioner; and, if circumstances appear casting doubt upon the truth of the affidavit, —as, that the petitioner appears by counsel not shown to be acting gratuitously,—it may be sent to the referee to investigate and report the facts as to the petitioner's ability to deposit the fees.

**2.** SAME.

A person employed by a railroad company at a salary of $30 per month, such salary being exempt from execution by the law of the state, is not entitled to take the benefit of the bankruptcy law without depositing the fees required by the act, on an affidavit that he cannot obtain the money

. with which to pay such fees; and his petition will be dismissed unless the fees are deposited within a reasonable time.

**3. SAME—EXEMPTIONS.**
   The exemptions allowed by the act do not excuse the payment from them of the fees of the bankruptcy court.

, In Bankruptcy.

James G. Reasonover, for petitioner.

HAMMOND, J.    This is an application for an adjudication in bankruptcy upon a petition and schedules which do not conform to the rules of the supreme court, and must, therefore, be amended, which the petitioner has leave to do.

The petition is filed upon the pauper's oath, the affidavit being that required by section 51 of the bankruptcy statute of July 1, 1898.    That section enacts that the clerk shall

"(2) Collect the fees of the clerk, referee, and trustee in each case instituted, before filing the petition, except the petition of a proposed voluntary bankrupt which is accompanied by an affidavit stating that the petitioner is without, and cannot obtain, the money with which to pay such fees."

There is no rule by the supreme court, nor other provision of the statute than that just quoted, declaring the effect of the affidavit, or regulating the practice.    It cannot be that it was the intention of the statute to confer upon the petitioner the unqualified right to proceed in bankruptcy upon his own affidavit as to his poverty, nor that such affidavit should be taken as conclusive of the fact.    It is noticed that some of the bankruptcy courts have established rules upon the subject, notably that of the Southern district of New York, which requires that:

"Petitioners who have made no deposit with the clerk for the services of the officers, should be examined by or under the direction of the referee on their appearance before him, with regard to their means; and if the referee is not satisfied of the bankrupt's inability to make the deposit a report thereof should be made to the judge."

This rule is in analogy with the common law, chancery, and admiralty practice in allowing poor persons to sue without security for costs.    Without any statute, all those courts by grace or favor permit poor persons to sue without costs, when, as a matter of fact, they are paupers.    But, to avoid imposition in that regard, it was always required that the poverty should in fact exist, as well as that the suitor, if a plaintiff, should have the certificate of counsel that he had a good cause of action; and the suitor's own affidavit was never regarded as conclusive of the fact of poverty.    Daniell, Ch. Prac. pp. 37, 38, 40, 41; Bradford v. Bradford, 2 Flip. 280, Fed. Cas. No. 1,766; Roy v. Railroad Co., 34 Fed. 276.    And if an order has been obtained as of course, permitting one to sue in forma pauperis upon a suppression of material facts, it will be discharged on an application by motion, on notice.    Daniell, Ch. Prac. p. 41, citing Nowell v. Whitaker, 6 Beav. 407.    And it will be seen by an examination of the authorities that the rule of exemption from costs where poverty actually exists applied to counsel as well as to officials of the court.    I do not see why a preliminary inquiry into the actual facts is precluded by a stat-

ute granting the privilege any more than it was under the general law before existing. Unless the statute peremptorily makes the affidavit of the proposed suitor conclusive of the fact, it is always open to the courts to protect themselves against any imposition by proper inquiry. The general orders in bankruptcy allow the fees to be paid out of the estate, if any, and when it shall appear that the bankrupt can obtain the money. An inquiry before adjudication is quite as proper as one afterwards to be made. Gen. Orders Bankr. 35 (4). It will be observed that the new bankruptcy statute is peculiar in its phraseology, and requires the affidavit to show that the petitioner "cannot obtain the money," with which to pay his fees. These are only $25, and it seems almost incredible that one who is able to procure counsel to resort to the bankruptcy court is unable to deposit that small sum to pay the officials of the court, unless it shall appear that counsel also is doing the work gratuitously. And there seems to be no good reason why one proposing to take the benefit of the bankruptcy statutes should be allowed to exhaust his means in the employment of counsel, and leave the other expenses unprovided for. I do not mean to hold that one who appears by counsel cannot have the benefit of the bankruptcy statute if he be really a pauper bankrupt; but what I do say is that, in the absence of any showing that counsel is acting without compensation, it is a suspicious circumstance as to the truth of the affidavit under this peculiar statute which requires the party to swear that he cannot obtain the money. If he can obtain the money to pay counsel, why cannot he obtain the money to deposit in court?

The statute does not mean that the party shall have the benefit of this provision because it is inconvenient to obtain the money, nor because he is willing to take the pauper's oath to avoid any effort to obtain it, but it means only that he shall be in such circumstances that it is reasonable to conclude that he really cannot obtain the money with which to pay the official fees; and the court will not be satisfied in doubtful cases to allow him the benefit of the pauper's oath until an inquiry has been made into the circumstances surrounding him. Hereafter, therefore, in this court, whenever the alleged poverty is doubtful, it will be sent by the clerk to the referee to take proof, upon notice to the bankrupt, and report the essential facts and circumstances showing whether in truth he is unable to obtain the money to make the deposit. In this case it is not necessary to make such a reference, because it appears from the statements of counsel that this petitioner is in the employment of a railroad company, receiving a monthly salary of $30, which, by our state statute, is exempt from execution at law for the payment of debts; and from this mere fact it conclusively appears that the petitioner could, if he would, obtain the money to make the small deposit required by the bankruptcy statute. His application to proceed under the pauper's oath is therefore denied, and his petition will be dismissed, unless within a reasonable time the deposit is made. Gen. Orders Bankr. 35 (4).

This is only one of many similar cases coming into this court under the mistaken belief that the statute allows any one who is willing to take the pauper's oath to secure a discharge in bank-

ruptcy. It only allows that privilege to those who are paupers in fact, as they must be, indeed, if they cannot raise $25 to pay the fees.

The argument is made at the bar that the petitioner needs his monthly salary of $30 to pay his own and his family's living expenses, and that the salary is exempt under the state law. This may be true, but still the petitioner is not a pauper in the sense of the bankruptcy statute. It does not allow one to proceed under the pauper's oath simply because he and his family are unwilling to make the necessary sacrifice to pay the fees, he being himself the judge whether the sacrifice shall be made or not. The exemptions allowed by the bankruptcy statute are not intended to cover exoneration from, or excuse the payment of, the fees of the bankruptcy court, incurred by the petitioner to more effectually protect him from his debts, and secure him in the property exempted only because the act adopts the state exemptions as its own.

There being no minimum limit in the statute upon the amount one must owe to entitle one to file a voluntary petition in bankruptcy, petitions have been filed where the whole indebtedness is for living expenses, and ludicrously small; and this convenient interpretation of the statute in relation to the pauper's oath is a temptation to such debtors to resort to the bankruptcy court once a month, if need be, or if one chooses, and thereby avoid the payment of all living expenses, without any cost to the debtor himself. It cannot be that the beneficent provisions of the bankruptcy statute were intended to have this comical and demoralizing result, and for this reason, if no other, the court should be strict in disallowing the pauper's oath to those who are not really entitled to it. Ordered accordingly.