George H. CASH, Petitioner,

v.

UNITED STATES of America,
Respondent.

Misc. No. 878.

United States Court of Appeals
District of Columbia Circuit.

Feb. 28, 1958.

Judgment Vacated June 16, 1958.

See 78 S.Ct. 1365.

Edgerton, Chief Judge, dissented.

Mr. Eugene Gressman, Washington, D. C. (appointed by this Court), for petitioner.

Mr. Oliver Gasch, U. S. Atty., and Messrs. Lewis Carroll and Nathan J. Paulson, Asst. U. S. Attys., for respondent. Mr. Milton Eisenberg, formerly Asst. U. S. Atty., also entered an appearance for respondent.

Before EDGERTON, Chief Judge, and PRETTYMAN and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition for leave to proceed on appeal *in forma pauperis*. Cash and a co-defendant were convicted of robbery. Cash alone petitioned the District Court for leave to appeal. That court denied the petition with the notation "not taken in good faith." Cash then filed a similar *pro se* petition in this court. The Government moved for an extension of time in which to respond, suggesting that as petitioner was then without counsel it would be "appropriate procedure" for this court to appoint counsel to represent him.[1]

This court appointed counsel and directed him to prepare a memorandum on behalf of the petitioner. Upon consideration of counsel's memorandum, the Government's opposition, and a reply memorandum submitted by counsel, we conclude that the petitioner raises no question of law which justifies authorizing an appeal *in forma pauperis*. The petition will therefore be denied, although at the same time we commend counsel for his diligent efforts on behalf of the petitioner. We also wish to indicate, for the benefit of members of the bar who may be called upon to represent persons in similar situations, approval of what appointed counsel did in this case; although we recognize, of course, that this particular procedure may not be appropriate or available in all cases. And, because there is currently being filed in the District Court and in this court a multitude of petitions to proceed on appeal in criminal cases without prepayment of fees and costs, we consider it appropriate to discuss our understanding of the considerations governing the disposition of such petitions.

The matter is covered by Section 1915 (a), Title 28 United States Code,[2] which reads in pertinent part:

"Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a citizen who makes affidavit that he is unable to pay such costs or give security therefor. * * *

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

1. Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 (1957); Ellis v. United States, 101 U.S.App.D.C. 386, 249 F.2d 478 (D.C.Cir.1957).

2. 62 Stat. 954 (1948).

■■■ The substance of this section of the statute is not the bare allowance of an appeal. This court does not allow an appeal; a convicted person always, under our statutes, has a legal right to appeal, provided, of course, he follows the rules and acts within the time prescribed. What the statute provides is that the courts may dispense with the payment of costs under certain conditions. Every phase of the administration of law costs money; judges, judicial personnel, the prosecutor's staff, etc., etc., etc., must be paid, and supplies must be purchased. A portion of those costs is imposed by law upon the litigants. The rationale of the statute dispensing with any such contribution by a litigant is that justice should be done even though the accused cannot meet the costs of its administration. If an accused cannot indicate that some error has been committed in the course of his conviction—cannot suggest with justification that justice is not being done,—there is no reason why the public should pay the costs which necessarily inhere in an appellate consideration. There is no rationale which supports an appeal without cost merely for the sake of appeal, i. e., an appeal without merit or purpose. When justice is at stake, the poor must receive every consideration vouchsafed the moneyed; the price of justice for the poor must be paid by the public.

The Supreme Court in Griffin[3] struck down a state statute which precluded an appeal unless the appellant, needing a transcript of the trial, bought it. The Court pointed out that under that statute, even if errors were committed which merited reversal, no appeal could be had by an indigent. The Court gave constitutional status to the principle that justice must be available. Mr. Justice Frankfurter, concurring, made clear the point we here make. He said, *inter alia*, on the subject: "When a State not only gives leave for appellate correction of trial errors but must pay for the cost of its exercise by the indigent, it may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent."[4]

It is sad but true that nobody can supply to the poor every privilege possessed by the well-to-do. Every indigent cannot be afforded defense by one of the most skilled, most experienced lawyers at the bar. People who have the money and wish to spend it for a foolish, useless litigation can do so. No principle, either legal or moral, implies that the public ought to supply indigents with the costs of foolish or useless litigation. But, if the achievement of justice is involved in a given matter, the public interest is such that the public will pay the costs necessary to insure justice to the poor. This is the principle involved in the statute we are considering, and such is its plain provision. The basic problem in the administration of the statute is: When and under what circumstances should the public bear the costs of an appeal in a criminal case? The short answer is: Whenever justice is at stake.

■■■ A petition for leave to proceed on appeal from a judgment in a criminal case under Section 1915(a) without prepayment of fees or costs proceeds in steps. The first step is that the convicted indigent, or someone in his behalf, prepares and files a petition in the District Court.[5] Usually this is done *pro se*. The petitioner in most instances is without extensive education. Almost always he is without legal training. Always he is without funds. Always he seeks escape from the judgment of conviction on any ground which appears to him suitable for that purpose.

3. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

4. Id., 351 U.S. at page 24, 76 S.Ct. at page 593.

5. A Court of Appeals may not ordinarily consider a petition for leave to appeal *in forma pauperis* unless an application for such leave was first made to, and denied by, the District Court. Waterman v. McMillan, 77 U.S.App.D.C. 310, 135 F.2d 807 (D.C.Cir.1943), certiorari denied, 322 U.S. 749, 64 S.Ct. 1160, 88 L. Ed. 1580 (1944).

■■ The second step is that the District Court acts upon the petition. If it allows the appeal the object of the petition is achieved; no further consideration of the plea to be allowed to appeal is necessary. The appeal proceeds at the expense of the United States in the same manner as does an appeal the costs of which are borne by the appellant. If the District Court denies the petition it may do so either with or without a certification that the appeal is not taken in good faith. Should the District Court deny the petition without certification, the petitioner is then free to proceed in the appellate court with a petition for leave to appeal, seeking allowance on a *de novo* consideration of the merits of the petition.

■■ If, on the other hand, the District Court certifies in writing that the appeal is "not taken in good faith," the statute says "[a]n appeal may not be taken". The statute is as plain as that. But several considerations intrude upon that simplicity. What is meant by "good faith" on the part of a petitioner seeking to take an appeal from a criminal conviction? Of course it does not mean merely a sincere wish on the part of the convicted person for extrication from his predicament or a sincere belief on his part that injustice has been done. Every convicted person probably has such beliefs, and in that sense every appeal would be in good faith. The statute would then be meaningless. We believe the statute has a meaning. We think "good faith", as the term appears in this statute, must refer to the substance underlying the assertions of error by the petitioner. If these asserted errors are clearly not grounds for reversal, or if they have no basis of fact in the record, they are "not in good faith".

In discussing the problem faced by the courts in determining whether or not given criminal appeals are to be allowed *in forma pauperis*, the Supreme Court has said [6] such appeals are to be allowed unless they may be characterized as "frivolous". "Frivolous" has a colloquial meaning of trifling or silly. It also has an established meaning in law, when applied to appeals, of "manifestly insufficient or futile",[7] "without merit and futile".[8] In the sense of being silly or trivial these petitions are never frivolous in the mind of the petitioner. Often, however, they are frivolous in the legal sense, in the sense of being "without merit and futile".

■ We believe the Supreme Court, in the Johnson and Farley cases,[9] used the

6. Johnson v. United States, supra note 1, 352 U.S. at page 566, 77 S.Ct. at page 550; Farley v. United States, 354 U.S. 521, 523, 77 S.Ct. 1371, 1 L.Ed.2d 1529 (1957).

7. Oxford English Dictionary (1933); Bouvier, Law Dictionary (3d rev. ed. 1914).

8. In United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946), the Supreme Court, Mr. Justice Black writing and citing many cases, held that the Circuit Court of Appeals on its own motion should have dismissed the appeal "as frivolous". Id., 327 U.S. at page 113, 66 S.Ct. at page 550. Appellate review had been sought on the alleged ground that the trial court made erroneous findings of fact, whereas, the Court found, the findings were indeed supported by evidence. See also the grounds upon which appellate courts dismissed as frivolous the appeals in Piuma v. United States, 126 F.2d 601 (9 Cir., 1942), cer-

tiorari denied, 317 U.S. 637, 63 S.Ct. 28, 87 L.Ed. 513 (1942); National Surety Corporation v. Clement, 133 N.J.L. 22, 42 A.2d 387 (1945); Mead v. Rudnick, 306 Mass. 616, 35 N.E.2d 485 (1940); Columbia Finance v. Romaguera, 40 So. 2d 749 (La.App.1949); Klade v. Palmer, 237 Wis. 581, 297 N.W. 365 (1941); Flanary v. Briscoe, 189 Okl. 34, 113 P. 2d 366 (1941); Leaver v. Parker, 121 F.2d 738 (9 Cir., 1941), certiorari denied, Leaver v. Citizens Nat. Trust & Savings Bank, 314 U.S. 700, 62 S.Ct. 480, 86 L.Ed. 560 (1942); Fransen v. Ranzino, 85 So.2d 311 (La.App.1956). See also the following cases in which federal appellate courts have denied appeals *in forma pauperis:* Gomez v. United States, 245 F.2d 346 (5 Cir., 1957); Parsell v. United States, 218 F.2d 232 (5 Cir., 1955); Higgins v. Steele, 195 F.2d 366 (8 Cir., 1952). Cf. Poulas v. United States, 95 F.2d 412 (9 Cir., 1938).

9. Supra note 6.

word "frivolous" in its legal meaning. In this sense "frivolous" means without any realistic chance of success on the merits, without an issue warranting consideration by the appellate court, or without substantiation in the record. No lower standard would give realistic effect to the statutory provisions.

Assuming that the District Court has denied an application for leave to appeal, the third step in this procedure is a timely petition to this court. If the District Court's denial is without certificate, the question before us is simply whether to dispense with the payment of fees and costs. In the words of the statute we "may authorize" the appeal. In such a case this court may act without the impediment of an adverse certification by the District Court. We merely determine whether we will or will not allow the appeal without the usual payment.

 If the District Court has certified that the appeal is not taken in good faith, we have two duties when a petition is presented to us:

First: We must make certain that the petitioner has been "assured some appropriate means * * * of making manifest the basis of his claim that the District Court committed error in certifying that the desired appeal was not pursued in good faith." [10] At this point petitioner may need the assistance of counsel to enable him to make manifest the basis of his claim of error in the District Court's certificate. Such "appropriate means", the Supreme Court indicated, may be "the district judge's notes or an agreed statement by trial counsel". Sometimes, where there is a conflict as to what the record shows, the petitioner must be afforded the opportunity of reviewing the transcript, or an equivalent of the transcript, of the trial proceedings, so that he may "substantiate his allegations".[11] In the case at bar we have made certain of the assistance of counsel, and counsel has reviewed the record of the trial proceedings and has summarized that record in considerable detail for our benefit.[12]

 Second: We must determine on the basis of the "appropriate means" whether the trial court erred in its certification. As the Supreme Court indicated in Johnson v. United States, supra,[13] the petitioner may claim "that the District Court committed error" in its certificate. He may claim that the certificate is "unwarranted" and that despite the District Court's ruling "the appeal should be allowed". The quoted expressions reflect the Supreme Court's views on the point. In the face of a certificate of the District Court our function is a review function. If we decide on the basis of an adequate record that the District Court committed error, we "may authorize" the appeal. But, if petitioner has counsel, and if we have seen an adequate record and decided that the District Court did not commit error, we may not authorize the appeal. The statute so says.[14]

 The determination that the trial court did or did not commit error depends upon whether the appeal sought

10. Johnson v. United States, supra, 352 U.S. at page 566, 77 S.Ct. at page 550.

11. Edwards v. United States, 355 U.S. 36, 78 S.Ct. 124, 2 L.Ed.2d 72 (1957); Farley v. United States, supra. Cf. Griffin v. People of State of Illinois, supra.

12. A stenographic transcript of the trial proceedings could have been ordered prepared at the expense of the United States, had petitioner or his counsel so requested. 62 Stat. 922 (1948), 28 U.S.C. § 753. See orders of this court in Alexander v. United States, Misc. 795, July 1, 1957; Isaac v. United States, Misc. 830, Aug. 2, 1957; Collins v. United States, Misc. 854, Aug. 26, 1957. It was not requested, however, and we believe the record prepared by counsel himself was adequate for evaluating the claims of error.

13. 352 U.S. at page 566, 77 S.Ct. at page 550.

14. More emphatically, the precise words of the statute are that "[a]n appeal *may not be taken*". (Emphasis supplied.)

would be "manifestly insufficient and futile". An appeal falls within this definition when applicable law and an adequate record of the trial proceedings amply show that the petitioner cannot realistically hope to succeed on the merits of his appeal.

In making a determination whether a petition to appeal is manifestly insufficient, the District Court and this court look not only at the face of the petition but also at its alleged basis.

The Supreme Court in Johnson[15] vouchsafed to an indigent petitioner opportunity to make manifest "the basis of his claim" in order that he may demonstrate error in the denial of his petition. And in Edwards[16] the Court spoke of the right of the petitioner "to substantiate his allegations." The bare allegations of the petition must have basis in the record, in the judge's notes, or in some other appropriate source. So an allegation of error may be manifestly insufficient and futile if in fact it has no basis in law or in the record.

Any point of law raised by a petitioner must have a basis in the record, either of fact or in a pleading or by proffer. Any such point must be procedurally available; e. g., an instruction alleged to be erroneous must have been objected to in compliance with the rule or fall within the orbit of the appellate court's discretion. Ordinarily, established rules of law will govern, but a petitioner may urge reexamination, and in such event the court will realistically appraise the justification for a reexamination. Statutes will ordinarily be applied as written, but a petitioner may challenge the validity of a statute, or of its application to him, in which event his question must be substantial. If, taking all considerations into account, the appeal is manifestly "insufficient and futile", the District Court does not err in certifying that it is not taken in good faith. In such event leave to appeal *in forma pauperis* must be denied.

In the case at bar the Government correctly refrained from opposing the petitioner's *pro se* petition for leave to appeal in this court until we were able to appoint counsel and consider the latter's memorandum and an adequate record of the trial proceedings. His memorandum treated each of the points petitioner sought to raise in his *pro se* petitions presented to the District Court and to this court. Counsel had discussed these points with petitioner and with the latter's trial counsel, and he spelled them out for our consideration. He concluded, however, that these were not grounds for appeal and elected instead to support the petition for leave to appeal on what is essentially a single, new point of law which the petitioner could not reasonably have been expected to recognize himself but which counsel, on the basis of his review of the trial transcript, thought was available to petitioner. Counsel digested the account of the trial proceedings (which he had had read to him by the court reporter from the latter's notes) in the form of a short appendix to his memorandum. The digest consisted of summaries of the direct testimony of each of the witnesses and, separately labeled, such further testimony as was elicited on cross and redirect examination. It also contained a résumé of the crucial points in the judge's charge to the jury. The Government's opposition controverted counsel's arguments of law and made frequent reference to his appendix. Petitioner's counsel filed a reply memorandum to the Government's opposition.

These papers, then, form a substantial basis on which we are able to rule. Petitioner asserts as error that his conviction was based upon an uncoerced, extra-judicial confession, corroborated principally by the tangible fruits of the confession. Prior to his arrest or arraignment petitioner voluntarily confessed to a friend on the police force that he had committed the pickpocketing for which he stands convicted. He then directed the policeman to the alley where he had discarded

15. 352 U.S. at page 566, 77 S.Ct. at page 550.

16. Edwards v. United States, supra note 11.

the stolen wallet after removing the cash from it. The wallet was not found where petitioner said he had discarded it, but identification papers that had been in it were found there. At the trial these papers were introduced into evidence to corroborate the confession to which the police officer testified. There was considerable other circumstantial evidence tending to corroborate the confession: The complaining witness identified the recovered papers as having been in his wallet; he also identified petitioner and the co-defendant as having been on the crowded bus with him at the time his wallet was stolen and as the two persons who had jolted him as the three were alighting from the bus; the co-defendant testified he had been on the bus at the time; and a written confession (later repudiated) by the co-defendant was introduced.

■ The Supreme Court has recently discussed the extent to which voluntary confessions must be corroborated by independent evidence in order to sustain a conviction.[17] The Court held that the corroborating evidence must both justify an inference by the jury that the confession is true and tend to establish the *corpus delicti*, and that, when so corroborated, the confession is sufficient to sustain a conviction. The independent evidence need not, itself, establish the *corpus delicti*; its function is corroboration.

The identification papers recovered at petitioner's direction were strong corroboration. They were not "tainted", in the sense that evidence obtained through a *coerced* confession is tainted, and were as admissible as the voluntary confession itself. These papers clearly showed the veracity of the confession and, when

taken together with circumstantial evidence that was more consistent with guilt than with innocence,[18] established the *corpus delicti* and were more than sufficient to sustain the jury's verdict.

■ In sum petitioner says his conviction should be reversed because his admission to the police officer was not sufficiently corroborated. Manifestly, on this record, this is an insufficient and futile ground for appeal. The attempt is frivolous in the legal meaning of that term.

Finding no suggestion that the petitioner has any realistic chance of success were the appeal to be allowed, we hold that the District Court did not err in certifying that the appeal was not sought in good faith. Accordingly, as the statute provides, an appeal may not be taken *in forma pauperis*. The petition is denied.

Petition denied.

BURGER, Circuit Judge.

I concur fully with what Judge PRETTYMAN has said and add this comment only because of the importance of the question and the volume of appeals affected.

In two recent cases[1] the Supreme Court has dealt with appeals in forma pauperis, one dealing with the right of the appellant to have counsel and the other with the right to have a transcript at public expense. These cases were disposed of by per curiam opinions. The importance of the subject matter, if nothing else, rules out any suggestion that the cases did not receive careful consideration. Had the Court intended a drastic change in a basic standard in so important a field,[2] it seems to me it

---

17. Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

18. Cf. Wigfall v. United States, 97 U.S. App.D.C. 252, 230 F.2d 220 (D.C.Cir. 1956).

1. Johnson v. United States, 1957, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593; Farley v. United States, 1957, 354 U.S. 521, 77 S.Ct. 1371, 1 L.Ed.2d 1529.

2. As has been suggested and argued.

would have by some discussion or treatment made that clear. The statute permits an appeal in forma pauperis to be denied or dismissed if "not taken in good faith" or if "frivolous," or "malicious."[3] Thus, the Supreme Court in its use of "frivolous" in Johnson and Farley was merely using the statutory language. There is certainly nothing in this which by itself imports any change in standards for appeals in forma pauperis. The most that can be read into the very brief orders of the Court in the Johnson and Farley cases is a reliance on the language of the statute, rather than on terms which many courts had used interchangeably with the statutory terms.

In various contexts the courts have used a variety of terms to describe an insufficient question, such as "without merit",[4] "futile",[5] "unworthy",[6] "manifestly vexatious",[7] "no substantial question",[8] "baseless", "not meritorious",[9] and of course as to appeals in forma pauperis, the statutory words "frivolous" and "not taken in good faith".[10] The cases involving appeals in forma pauperis reflect a tendency to equate these other terms to the statutory terms and to use the terms interchangeably.[11] Most of these characterizations, including the statutory terms, have connotations and a range of meaning which render them somewhat less than precise. If a "substantial question" test is applied to appeals in forma pauperis in the sense of *important question*, it would clearly be

3. Section (d) states "The court * * * may dismiss the case * * * if satisfied that the action is frivolous or malicious." This was substantially the language of the statute when it was first passed in 1892 (27 Stat. 252). That statute dealt only with poor plaintiffs, but in 1910 (36 Stat. 866) was amended to include poor defendants and parties on appeal. The 1910 amendment in establishing in forma pauperis privileges for parties on appeal, stated that no such privileges were available if the court certified that in its opinion the appeal was "not taken in good faith." Thus, in forma pauperis appeals must be taken in good faith, and be not frivolous or malicious. Kinney v. Plymouth Rock Squab Co., 1915, 236 U.S. 43, 35 S.Ct. 236, 59 L.Ed. 457.

4. E. g., Gilmore v. United States, 8 Cir., 1953, 131 F.2d 873.

5. Ibid.

6. See Brinkley v. Louisville & N. R. Co., C.C.W.D.Tenn.1899, 95 F. 345.

7. Ibid.

8. Morris v. Igoe, 7 Cir., 1953, 209 F.2d 108; Higgins v. Steele, 8 Cir., 1952, 195 F.2d 366, 369; see Aylor v. United States, 5 Cir., 1952, 194 F.2d 968.

9. Ellis v. United States, 1957, 101 U.S. App.D.C. 386, 249 F.2d 478.

10. See McMillan v. Taylor, 1946, 81 U.S. App.D.C. 249, 160 F.2d 217; Wheeler v.

Reid, 1948, 84 U.S.App.D.C. 180, 175 F.2d 829, 831. The latter case equated "not taken in good faith" to include cases where the question was one as to which there was no reasonable basis for a different conclusion. See also Ellis v. United States, supra note 9. See also United States v. Johnson, 1946, 327 U.S. 106, 113, 66 S.Ct. 464, 467, 90 L.Ed. 562, a case involving a pre-paid appeal, in which Mr. Justice Black, speaking for the Court, said:
"* * * the Circuit Court of Appeals here after studying the issues raised *and upon determining that the only objection was to the trial court's findings on conflicting evidence,* should have decided that this does not present a reviewable issue of law and on its own motion have dismissed the appeal as frivolous." (Emphasis added.)

11. We should not overlook 28 U.S.C. § 753 (f), in which Congress appears to equate frivolous with the absence of a substantial question:
"* * * Fees for transcripts furnished in *criminal or habeas corpus* proceedings to persons allowed to sue, defend, or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose. Fees for transcripts furnished in *other* proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that *the appeal is not frivolous but presents a substantial question.* * * *" (Emphasis added.)

too strict a test. On the other hand, if "substantial question" is interpreted as I think it has been, as meaning the appeal must present a question or issue which has some substance or some merit, some scintilla of prospect of success, then it is not too high a standard. An appeal which raises a question or questions which have *no* substance has no prospect of success and is therefore without merit and "frivolous", and "malicious" and "not taken in good faith."

To say that the "United States can afford to let poor defendants take criminal appeals that the rich *could* take" does not set a standard of law but suggests what might arguably be a socially desirable goal. The "rich," as Judge PRETTYMAN pointed out, can take any appeal, the well-to-do can take *almost* any, the moderately well-to-do can take some, depending on their urgency. Any argument equating the "rich" to the "poor" has strong emotional appeal but it overlooks some important factors. Literally applied it would make appeals mandatory for the "poor." If *all* criminal appeals are to be reviewed, regardless of merit, Congress should tell us so.

EDGERTON, Chief Judge (dissenting).

Though I cannot concur in the judgment or in the court's opinion, I agree with much that is said, including the court's commendation of counsel whom we appointed to represent the petitioner. I find it hard to reconcile that commendation with the court's ruling. In my opinion the carefully documented contention which has been presented, after mature reflection, by competent counsel who has nothing to gain except a sense of duty well done, is not frivolous.

In discussing the "good faith" requirement of what is now 28 U.S.C. § 1915(a) Senator Bacon, a member of the Judiciary Committee, said: "When a judge has heard a case and it is about to be carried to an appellate court, he * * * is in a position to judge whether it is a case proceeding captiously, or viciously, or with prejudice, or from any other improper motive, or whether the litigant is proceeding in good faith." 45 Cong. Rec. 1533. No one suggests that petitioner or his counsel is proceeding captiously, or viciously, or with prejudice, or from any improper motive.

In another case the Solicitor General advised the Supreme Court: "We agree with petitioner that, as Mr. Justice Frankfurter pointed out on the application for bail in Ward v. United States, 76 S.Ct. 1063 [1 L.Ed.2d 25] (decided August 8, 1956), there is a qualitative distinction between 'frivolous' and 'lack of a substantial question'. We further agree that this Court has indicated in Johnson v. United States, 352 U.S. 565 [77 S.Ct. 550, 1 L.Ed.2d 593] and Farley v. United States, 354 U.S. 521 [77 S.Ct. 1371, 1 L.Ed.2d 1529] that 'frivolity' is the proper standard to be applied in determining lack of good faith under the *in forma pauperis* statute. * * * Neither case equated 'lack of a substantial question' with 'frivolous.' "[1] In still another case, in which this court had applied the "substantial question" test, the Solicitor General advised the Supreme Court: "[W]e agree that the proper test to be applied in determining whether a defendant should be allowed to appeal *in forma pauperis* is whether the appeal is frivolous, not whether the question is substantial. We believe that there is a difference of substance, not merely of terminology, in these two standards, and that this Court has determined that the proper standard to be applied is that of lack of frivolity. * * * [W]e do not believe that here the question raised, that of probable cause for the arrest, can necessarily be

---

[1]. Brief p. 7, in opposition to the petition for a writ of certiorari in Hill v. United States, 357 U.S. 911, 78 S.Ct. 1157.

characterized as frivolous, even though ultimately the appeal may prove unsuccessful. We therefore suggest that it would be appropriate to remand the cause for reconsideration by the Court of Appeals as to whether the appeal is frivolous."[2]

An appeal may raise a substantial question and yet be unlikely to succeed. Obviously one that falls short of raising a substantial question is very unlikely to succeed. It does not follow that it is frivolous. Even when the costs of a criminal appeal are prepaid, if the appeal is obviously groundless it may be dismissed under Rule 39(a), F.R.Crim.P. 18 U.S.C. I think it clear that if the costs of the appeal now proposed were prepaid, this court would not dismiss the appeal but would permit it to be briefed and argued in the usual way. If that be true, this court's action prevents the petitioner because he is poor from proceeding with an appeal he could proceed with if he were rich. Though full briefing and oral argument would probably not result in reversing petitioner's conviction, counsel's memorandum convinces me that there would be a possibility of reversal.[3] I think it follows that we should allow an appeal in forma pauperis.

Some have urged that courts, government counsel, and counsel for poor defendants should not be burdened with appeals that are unlikely to succeed. To this there are several answers. The United States can afford to let poor defendants take criminal appeals that the rich could take. It cannot afford to do otherwise. And the burden of prosecuting, defending, and deciding appeals, though it is greater, is not inordinately greater than the burden of prosecuting and deciding disputes, such as this one, over the question whether an appeal should be made possible.

---

**2.** "Brief in opposition" pp. 3, 4, in Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974.

**3.** See Mr. Justice Douglas in Herzog v. United States, 1955, 75 S.Ct. 349, 351, 99 L.Ed. 1299.