Paul Rodger WELLER, Appellant,

v.

Fred H. DICKSON et al., Appellees.

Andrew Emmitte POPE, Appellant,

v.

Richard A. McGEE et al., Appellees.

Nos. 17606, 17450.

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1963.

Rehearing Denied in No. 17450
March 29, 1963.

Dick Ivan Oberholtzer and Donald D. Roberts, San Francisco, Cal., for appellants.

Stanley Mosk, Atty. Gen. of California, Doris H. Maier, Asst. Atty. Gen., and Edsel W. Haws, Deputy Atty. Gen., Sacramento, Cal., for appellees.

Before HAMLIN and DUNIWAY, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

These cases involve appeals from two orders denying permission to appellants to file civil actions in forma pauperis. In both cases appellants brought actions for damages under the Civil Rights Act, 42 U.S.C. §§ 1981–1988,[1] against various

---

1. In Weller v. Dickson, appellant specified certain sections of said act.

officials of the State of California. Jurisdiction of the District Court was asserted, among other provisions, under said act and 28 U.S.C. § 1343. Appellate jurisdiction is asserted under 28 U.S.C. § 1291.

In Weller v. Dickson, Weller while confined at San Quentin Prison mailed certain documents to a District Court. One of the documents was a complaint which alleged that defendants named therein had denied Weller timely access to the courts because the prison authorities refused to type and mail legal documents on the day he requested them to be typed and mailed. Weller sought damages in the sum of $20,000. Another document was entitled "affidavit in forma pauperis".

The District Court denied his "application for relief" and this Court granted leave to proceed, on appeal, in forma pauperis. Further we consolidated the two cases for briefing and argument.

In Pope v. McGee, Pope while a prisoner at Folsom State Prison mailed a complaint and an application to proceed in forma pauperis to a District Court. The complaint alleges that the defendants named therein denied him equal protection and due process of the law in that they denied him the right to seek a writ of habeas corpus, the right to testify freely before a court of the State of California, the right to be free and secure from suffering prohibited punishment and the right to prosecute this suit before a Federal Court.

Pope's application for leave to file his complaint in forma pauperis was denied and this Court granted leave to proceed, on appeal, in forma pauperis.

In their consolidated briefs appellants have argued two points which we shall set forth and treat separately.

1. That although the privilege of proceeding in forma pauperis in civil actions for damages should be sparingly granted, the unsettled nature of the law and the particular facts in these cases make them cases in which the granting of such a privilege is appropriate.

2. That appellant Pope's complaint alleges facts which, if true establish that his claim has merit and that he is entitled to be heard.

Appellants have stated "the privilege of proceeding in forma pauperis is a matter within the discretion of the trial court and in civil actions for damages should be allowed only in exceptional circumstances." We agree with this statement and hold that in denying leave to proceed in forma pauperis the trial courts did not abuse their discretion. Therefore, appellants' first contention is without merit.

We have examined Pope's complaint and believe that the allegations contained therein are insufficient to entitle him to be heard. Therefore, appellants' second contention is without merit.

In connection with forma pauperis proceedings these generalities need no citation, namely, the benefits are entirely statutory, they are granted as a privilege and not as a matter of right. The refusal to grant is not a violation of due process. The granting or refusing of such procedure is within the discretion of the District Court. The denial is in the nature of a final order and thus appeal lies.

There is only one matter to be determined on this appeal, did the lower court, in the first instance, abuse its discretion? Unless we are satisfied that the lower courts in denying the relief sought, namely to file and litigate their respective civil cases in forma pauperis, clearly abused their statutory discretion we should affirm each of the orders appealed from.

But before we do this we must consider for a moment what is meant by the exercise and abuse of discretion. The judicial efforts to give these expressions some legal stability are legion. It was held in Hartford-Empire Co. v. Obear-Nester Co., 95 F.2d 414, 417 (8th Cir. 1938) that where an apellate court has power to review the exercise of a judicial discretion governed by situation and circumstances affecting exercise of discretion, inquiry is confined to the question

whether the situation and circumstances clearly show an "abuse of discretion", that is, arbitrary action not justified in view of the situation and circumstances.

The Court in N. L. R. B. v. Gurnsey-Muskingum Elec. Co-op., 285 F.2d 8, 11 (6th Cir. 1960) pointed out that there is no exact measure of what constitutes an abuse of discretion, and it is more than the substitution of judgment of one tribunal for that of another, discretion being governed by situation and circumstances affecting each individual case, and even where an appellate court has power to review exercise of such discretion, inquiry is confined to whether such situation and circumstances clearly show an abuse of discretion, that is, arbitrary action not justifiable in view of such situation and circumstances.

Present day decisions have tended to erode the common law meaning of many words and phrases used in legal literature, and as a result the word "discretion" as it is now generally used in the law, is but an anemic facsimile of a robust ancestor. Unless we are about to attend its demise, and make the word entirely meaningless, we should proceed with some caution.

In passing, and by way of observation, we note that if actions of this nature, brought by incarcerated prisoners, are to be indiscriminately permitted they could seriously disrupt prison discipline. Moreover, they would give prisoners a field day in the courts, at public expense.

■ Since California law, see Section 352, C.C.P., tolls the running of the statute of limitations during the term of imprisonment of the person in whom the cause of action resides, the action, surviving the term of imprisonment, can be brought in a more favorable atmosphere, namely, after the potential plaintiff has again become a member of free society.

Following the submission of these cases it occurred to the court that an additional matter may be pertinent to a decision by this court. Namely, whether, and to what extent prisoners of the State of California, have rights and/or capacity to sue in federal courts while they are incarcerated. In view of the fact that this matter was not discussed in the briefs or at oral argument we entered an order directing counsel to file memoranda dealing with the effect of the California Penal Code Secs. 2600 and 3054; Rule 17(b) of the Federal Rules of Civil Procedure and Sec. 352 of the California Code of Civil Procedure on this matter.

■ Briefs were filed by the parties and in each brief the parties concluded generally that the above provisions of the Federal and California Law do not act as a bar to the filing of an action by a state prisoner under the Civil Rights Act.

We agree with this conclusion and invite the reader's attention to McCollum v. Mayfield, 130 F.Supp. 112, 116–117 (N.D.Calif.1955), wherein the court considered the effect of Sec. 2600 of the California Penal Code and Rule 17(b) of the Federal Rules of Civil Procedure upon the right of an inmate of a California State Prison to bring an action under 42 U.S.C. § 1983, relating to civil rights. The court held that the prisoner had the capacity to bring the action.

In accordance with this opinion it is, therefore,

ORDERED, that the orders of the District Court denying permission to appellants to file their actions in forma pauperis, are hereby affirmed.

DUNIWAY, Circuit Judge (concurring).

I concur in the result reached in the opinion of my brother ROSS, but not entirely in the reasoning by which that result is attained. It is not easy to define the standard by which the discretion of a trial judge is to be guided in deciding whether or not to grant leave to proceed in forma pauperis under 28 U.S.C. § 1915. I think, however, that a distinction should be drawn between civil and criminal cases, although Judge ROSS' opinion does not purport to do so. I also think that the district judge should have a broader discretion in civil actions brought by prisoners against

their jailers than in other civil actions. We know from sad experience with habeas corpus and 2255 cases that imprisoned felons are seldom, if ever, deterred by the penalties of perjury. They do not hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court. The prospect of amercing their jailers in damages must be a most tempting one, even if it will not get them their freedom. The disruption of prison discipline that the maintenance of such suits, at government expense, can bring about, is not difficult to imagine. Particularly since Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, it has become apparent that the "jailhouse lawyers" think that they have a new bonanza in the Civil Rights Act.

The idea of suits by prisoners against their guardians is not new. But up to now, the federal courts have pretty uniformly killed them off.[1] Attempts have been made to use habeas corpus for this purpose. These have met the answer that habeas corpus is not a proper remedy, because it only tests the legality of detention. (Snow v. Roche, 9 Cir., 1944, 143 F.2d 718; Taylor v. United States, 9 Cir., 1950, 179 F.2d 640). Other circuits agree. (But see Coffin v. Reichard, 6 Cir., 1944, 143 F.2d 443, 155 A.L.R. 143). Various civil actions have been tried, but the courts have uniformly held that the prison authorities have discretion as to the treatment of prisoners, not controllable or remediable by the courts in civil actions. We have repeatedly so held. (Stroud v. Swope, 9 Cir., 1951, 187 F.2d 850; Sanders v. Johnston, 9 Cir., 1947, 159 F.2d 74; Numer v. Miller, 9 Cir., 1948, 165 F.2d 986; Sanders v. Swope, 9 Cir., 1949, 176 F.2d 311). Again, other circuits agree. (Taylor v. Steele, 8 Cir., 1951, 191 F.2d 852; Prince v. Klune, 1945, 80 U.S.App.D.C. 31, 148 F.2d 18; Laughlin v. Cummings, 1939, 70 App.D.C. 192, 105 F.2d 71; Platek v. Aderhold, 5 Cir., 1934, 73 F.2d 173; Day-

ton v. Hunter, 10 Cir., 1949, 176 F.2d 108; Sturm v. McGrath, 10 Cir., 1949, 177 F.2d 472). The foregoing are all actions by federal prisoners. (Cf. Fulwood v. Clemmer, 1961, 111 U.S.App. D.C. 184, 295 F.2d 171). There is also one case in which a suit by a state prisoner was dismissed. (Kelly v. Dowd, 7 Cir., 1944, 140 F.2d 81). One ground, however, was that suit should have been in the state court, a ground not available in a civil rights case. Taylor v. Steele, supra, and Prince v. Klune, supra, involve attempts to proceed in forma pauperis. The others do not.

Several of these cases contain strong language to the effect that it is bad policy to allow such suits. Perhaps the best policy statement is in Higgins v. Steele, 8 Cir., 1952, 195 F.2d 366, 369, a habeas corpus case. "While it is important that no prisoner be denied justice because of his poverty, it is also important that the prison authorities, government counsel, and the courts be not harassed by patently repetitious, meritless, frivolous or malicious proceedings."

The same circuit, in Taylor v. Steele, supra, said that section 1915 does not require a district court "to permit a federal prisoner to sue in forma pauperis those in whose custody he has been placed by the Attorney General for confinement and medical care." (191 F.2d at 853)

A comparable view was taken by the Seventh Circuit in Kelly v. Dowd, supra, where the court said: "The acts of prison officials, vested with a rather wide discretion in safekeeping and securing prisoners committed to their custody and charged with the right and duty to maintain discipline among the inmates, should be upheld if reasonably necessary to effectuate the purposes of imprisonment." (140 F.2d at 83)

In Platek v. Aderhold, supra, the Fifth Circuit took a comparable position: "The court has no power to interfere with the

---

1. I am aware that there are those who think that this judicial policy is mistaken, but the cases indicate that there are not many judges who think so. See Comment, 72 Yale Law Journal 506 (1963).

conduct of the prison or its discipline, but only on habeas corpus to deliver from the prison those who are illegally detained there." (73 F.2d at 175)

The Tenth Circuit agrees. In Dayton v. Hunter, supra, 176 F.2d at 109, it is stated: "A court of equity does not have power in a case of this kind to superintend through injunctive processes the conduct of a federal penitentiary or its discipline."

We have used similar language in Taylor v. United States, supra, 179 F.2d at 643: "It is not within the province of the court to supervise the treatment of prisoners in the penitentiary, but only to deliver from prison those who are illegally detained there."

The foregoing views can be supplemented by those expressed in other civil actions, not involving prisoners. Fletcher v. Young, 4 Cir., 1955, 222 F.2d 222, was an action to recover real property. The court said that there is a "public policy embodied in the statute, viz. that, while persons who are unable to pay costs or give security therefor should be allowed to prosecute or defend actions for the protection of their rights without being required to pay costs or give security, they should not be allowed under the cover of the statute to abuse the process of the court by prosecuting suits which are frivolous or malicious." (Id. at 224)

O'Connell v. Mason, 1 Cir., 1904, 132 F. 245, was an action against a judge for damages resulting from judicial action. Leave to proceed in forma pauperis was denied. The court said, referring to the 1892 statute: "It is quite clear that Congress, while intending to extend to poor and meritorious suitors the privilege of having their wrongs redressed without the ordinary burdens of litigation, at the same time intended to safeguard members of the public against an abuse of the privilege by evil-minded persons who might avail themselves of the shield of immunity from costs for the purpose of harassing those with whom they are not in accord, by subjecting them to vexations and frivolous legal proceedings." (Id. at 247)

To similar effect is Boggan v. Provident Life & Accident Ins. Co., 5 Cir., 1935, 79 F.2d 721.

Similar views have been expressed in civil rights cases: United States ex rel. Morris v. Radio Station WENR, 7 Cir., 1953, 209 F.2d 105, 107. See also, Caviness v. Somers, 4 Cir., 1956, 235 F.2d 455 and our own decision in John v. Gibson, 9 Cir., 1959, 270 F.2d 36. (I do not agree with the dictum in that case to the effect that the rules are the same in civil and criminal cases.)

There are many cases that distinguish civil from criminal cases, some of them dealing with the appointment of counsel, and basing the distinction upon the fact that the Sixth Amendment applies only to criminal cases. See: habeas corpus: Anderson v. Heinze, 9 Cir., 1958, 258 F.2d 479; Dorsey v. Gill, 1945, 80 U.S.App. D.C. 9, 148 F.2d 857; § 2255: In re Dinerstein, 9 Cir., 1958, 258 F.2d 609. Three cases make a distinction between civil and criminal cases, as to the right to proceed in forma pauperis on appeal. United States v. Murphy, 2 Cir., 1957, 245 F.2d 751 (habeas corpus); Hill v. Settle, 8 Cir., 1957, 244 F.2d 311 (habeas corpus); Gershon v. United States, 8 Cir., 1957, 243 F.2d 527 (§ 2255).

Proceedings in forma pauperis are not new. They go back at least as far as the Statute of 11 Henry VII, Ch. 12. (See Brinkley v. Louisville & N. R. Co., C.C. W.D.Tenn., 1899, 95 F. 345, where the history is discussed at length.) It has been said that this statute became a part of our common law. (Bristol v. United States, 7 Cir., 1904, 129 F. 87). In 1892 Congress adopted an act providing for proceedings in forma pauperis, quite similar to the statute of 11 Henry VII (27 Stat. 252) and applying only to civil cases. This was held not to apply to appeals or writs of error, either to the Circuit Court of Appeals (Bradford v. Southern Ry. Co., 1904, 195 U.S. 243, 25 S.Ct. 55, 49 L.Ed. 178) or the Supreme Court (Gallaway v. Fort Worth Bank, 1902, 186 U.S. 177, 22 S.Ct. 811, 46 L. Ed. 1111). In Bradford, the Supreme Court said that the statute should be con-

strued strictly, because it allows a plaintiff to proceed "at the expense of others."

In Kinney v. Plymouth Rock Squab Co., 1915, 236 U.S. 43, 35 S.Ct. 236, 59 L.Ed. 457, there was a petition for leave to prosecute a writ of error in forma pauperis. The action was based upon a non-existent judgment. The court held that the action was without merit, and denied leave. It expressly said that the broadening of the coverage of the statute by the 1910 amendment (36 Stat. 866, from which the present statute does not differ materially) did not change the "discretion as to the meritorious character of the cause" that the court was to exercise.

As my brother ROSS points out, many cases state that a proceeding in forma pauperis is purely statutory (Stanley v. Swope, 9 Cir., 1938, 99 F.2d 308; Brown v. Johnston, 9 Cir., 1938, 99 F.2d 760); that it is a privilege, not a right (In re Pierce, 9 Cir., 1957, 246 F.2d 902; De-Maurez v. Swope, 9 Cir., 1939, 104 F.2d 758; Jefferson v. United States, 9 Cir., 1960, 277 F.2d 723; Barkeij v. Ford Motor Co., 9 Cir., 1956, 230 F.2d 729); that the court has discretion (Kirby v. Swope, 9 Cir., 1955, 218 F.2d 814; Huffman v. Smith, 9 Cir., 1949, 172 F.2d 129; Jefferson v. United States, supra). I cite only Ninth Circuit cases.

I think that, when the action is a civil suit by a state prisoner against his jailers, whether under the Civil Rights Act or not, the district court should have, and has, a broad discretion, and can deny leave to proceed in forma pauperis even though the complaint does state a claim for relief, if the court is of the opinion that the plaintiff's chances of ultimate success are slight. This view is grounded upon two policy considerations: (1) that it would be disruptive of prison discipline to permit such a suit to proceed while the prisoner is still in custody, whether the prisoner be a federal convict or a state convict, and (2) that in the case of state convicts the maintenance of such suits in federal courts would produce unseemly conflict between federal courts and state authorities.

My brother ROSS points out the statute of limitations is suspended while the prisoner remains confined, so that he does not lose his asserted rights if he has any. The case might be different if there were no tolling statute in the jurisdiction involved.

In two of our recent cases, Reece v. State of Washington, 9 Cir., 1962, 310 F. 2d 139 and Wright v. Rhay, 9 Cir., 1962, 310 F.2d 687, it is stated that the court's authority to deny leave to proceed in forma pauperis, in a state prisoner's civil rights action against his jailers, "is to be exercised with great restraint, and generally only where it would be proper to dismiss the complaint sua sponte before service of process if it were filed by one tendering the required fees." The quoted language used was dictum, and in my opinion, should not be applied to cases in which a prisoner sues his jailers. Whether it is a proper standard in other civil cases can be determined at an appropriate time.