Steven Eugene **ROBERTS**, Plaintiff,

v.

Alexander **BARBOSA**, Correctional Officer, Department of Corrections, State of California, et al., Defendants.

No. 63–1269.

United States District Court
S. D. California,
Central Division.

Feb. 24, 1964.

Supplemental Opinion May 19, 1964.

Steven E. Roberts, in pro. per.

Stanley Mosk, Atty. Gen. of California, Los Angeles, Cal., for defendants.

HALL, Chief Judge.

Not unexpectedly to those having experience in the trial of criminal cases, persons convicted of crimes and in the custody of their jailers do not look upon the case of Monroe v. Pape (1961) 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, and numerous other cases decided by the Supreme Court concerning civil rights, as a pronouncement of principles for the redress of genuine grievances or wrongs, but rather as a blackjack to be used indiscriminately, maliciously, and at will to harass and annoy not only their jailers, but Judges, Jurors, witnesses and everyone having anything to do with their conviction. This is such a case.

The plaintiff in this case is imprisoned by the State of California for the crime of escape. He was arrested and tried in San Bernardino County, California.

The Judgment was affirmed on appeal by the Fourth District Court of Appeals [People v. Roberts, 213 Cal.App.2d 387, 28 Cal.Rptr. 839]. Hearing was denied by the State Supreme Court, and certiorari was denied by the United States Supreme Court, 375 U.S. 909, 84 S.Ct. 204, 11 L.Ed.2d 149.

Plaintiff's action [1] seeks $2,417,000 in "punitive" damages and $188,000 in actual damages, based on alleged violations of the Federal Civil Rights Statutes by 44 different defendants, being certain officers of one of the Correctional Institutions of the State of California, the Sheriff of San Bernardino County and certain of his deputies, the District Attorney of San Bernardino County and one of his deputies, all the members of the Board of Supervisors of San Bernardino County, Judges of the Municipal Court of San Bernardino, the Judge of the Superior Court who heard his case, all of the Judges of the District Court of Appeals which affirmed his conviction, the Attorney General of the State of

1. The Complaint with exhibits is 50 typewritten pages. Plaintiff filed 45 copies, all prepared at public expense.

California and certain of his deputies, the County Clerk of San Bernardino County and several deputies, his own attorney, witnesses who testified at his trial, and to cap it, he brings in as defendants all of the members of the Jury which convicted him of the crime of escape for which he is now imprisoned by the State of California.

Plaintiff presented an affidavit under 28 U.S.C. § 1915(a) alleging that he was unable to pay the costs of suit or give security therefor. Upon that showing and without examination of the "Complaint," the undersigned made an Order allowing the filing of the Complaint without payment of the Clerk's filing fee, but did not authorize the service of process on the 44 defendants by the Marshal at public expense, or waive any other fees or costs. I directed the Clerk to send a copy of the Complaint to the Attorney General of the State of California, and the Attorney General, appearing specially, filed a Motion for summary judgment.

Since that time, I have examined the Complaint and have concluded that the action is frivolous, vindictive, and malicious, and that Plaintiff should not be permitted to proceed further at public expense *in forma pauperis*, but that the action should be dismissed *sua sponte*.

Federal courts have an extremely limited area in which they may act pertaining to the treatment of prisoners confined in State Institutions. [United States ex rel. Atterbury v. Ragen (7th–1956) 237 F.2d 953, Cert. den. 353 U.S. 964, 77 S.Ct. 1049, 1 L.Ed.2d 914].

■ In a civil action for damages under the Civil Rights Act against public officials, highly specific facts are required to be alleged. [Agnew v. City of Compton (9th–1956) 239 F.2d 226, 231, Cert. den. 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910]. A complaint does not state a cause of action under the Civil Rights Act, absent allegations that the conduct alleged was in pursuance of a systematic policy of discrimination against a class or group of persons. [Truitt v. State of Illinois (7th–1960)

278 F.2d 819, Cert. den. 364 U.S. 866, 81 S.Ct. 109, 5 L.Ed.2d 88; Agnew v. City of Compton, supra]. There are no such allegations here.

In Weller v. Dickson (9th–1963) 314 F.2d 598, page 600, Cert. den. 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72, the Court said:

"In connection with forma pauperis proceedings these generalities need no citation, namely, the benefits are entirely statutory, they are granted as a privilege and not as a matter of right. The refusal to grant is not a violation of due process. The granting or refusing of such procedure is within the discretion of the District Court. The denial is in the nature of a final order and thus appeal lies."

■ In the exercise of the discretion granted by 28 U.S.C. § 1915(a), the District Court is authorized to deny leave to proceed *in forma pauperis* at the outset if it appears from the face of the complaint that the action is frivolous and should be dismissed *sua sponte* before service of process, if it were filed by one tendering the required fees. [John v. Gibson (9th–1959) 270 F.2d 36; Reece v. State of Washington (9th–1962) 310 F.2d 139; Wright v. Rhay (9th–1962) 310 F.2d 687, Cert. den. 373 U.S. 918, 83 S.Ct. 1309, 10 L.Ed.2d 418; Weller v. Dickson (9th–1963) 314 F.2d 598, Cert. den. 373 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72]. Stiltner v. Rhay (9th–1963) 322 F.2d 314 suggests the better practice is to do as has been done here, viz.: permit the filing with the Clerk but withhold service of process until the right to proceed is examined, as approved by the Tenth Circuit in Oughton v. United States (1962) 310 F.2d 803, Cert. den. 373 U.S. 937, 83 S.Ct. 1542, 10 L.Ed.2d 693.

The Court is to be " * * * governed by situation and circumstances affecting exercise of discretion." [Weller v. Dickson, supra, 314 F.2d p. 600].

In exercising that discretion, the courts cannot overlook the fact that as

to persons in prison, the Statute of Limitations is tolled [Calif.Code Civ.Proc. § 352] and the suit can be brought in a "more favorable atmosphere * * * after the potential plaintiff has again become a member of free society." [Weller v. Dickson, supra].

Nor can courts brush aside the fact that, as to both prisoners and those not confined, in a *forma pauperis* proceeding, there will be no recourse to defendants even for costs, against plaintiffs, for ill-conceived and malicious and unfounded suits, to say nothing of the trouble, harassment, time, and expense such as attorney fees incurred or expended in defending a suit, which cannot be covered by an assessment for costs.

While this Court is ever alert to protect those accused of crime, it is time that the courts recognize that society and its members have some rights, as well as convicted criminals. Especially where, as here, a convicted felon,[2] on his own naked oath, would put 44 persons, each of whom has taken a solemn public oath to do his particular duty and to uphold the law, to the trouble and expense of defending the outrageous demands of this plaintiff. Day after day the courts are instructing juries that persons are presumed to obey the law. The presumption that each defendant named herein obeyed the law in conformity with his oath cannot be disregarded in the exercise of discretion as to whether or not this plaintiff can proceed at public expense.

Day after day the courts are instructing juries that a witness may be impeached by showing that he has been convicted of a felony. There is no sound reason why this salutary rule of law should not induce just a little skepticism concerning the good faith of this plaintiff, especially in view of the fact that 12 jurors disbelieved his testimony at his trial where one of his defenses was that he was *not the man who escaped,* and in view of his exorbitant demands.

As noted, the complaint is in seven "causes of action."

In the first "cause of action," plaintiff seeks $125,000 as "punitive" damages from each of the following: the Sheriff and three of his deputies, the Judge of the Municipal Court, the District Attorney and his deputy who tried plaintiff on the escape charge, and an additional $1,500 in "general" damages from the Sheriff, and an additional $1,500 in "general" damages from the Municipal Judge —a total of $875,000 in "punitive" damages and $3,000 in "general damages for an alleged eight day solitary confinement.

■ A cause of action will not arise under the Civil Rights Act because of solitary confinement by a State of a prisoner in its custody. [Siegel v. Ragen (7th–1950) 180 F.2d 785, Cert. den. 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1391, Rehearing den. 340 U.S. 847, 71 S.Ct. 12, 95 L.Ed. 621]. Thus, the solitary confinement as alleged in the "First Cause of Action" is not actionable in the Federal courts.

■ Moreover, the District Attorney and his Deputy and the Judge of the Municipal Court have immunity from suit under the Civil Rights Act. For a collection of cases dealing with immunity, see: Rhodes v. Houston (D.C.Nebr.1962) 202 F.Supp. 624, Aff. 8 Cir., 309 F.2d 959, Cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719; Toscano v. Olesen (S.D. Calif.1960) 189 F.Supp. 118.

In the second "cause of action," plaintiff seeks $10,000 as "punitive" damages from each of three deputy sheriffs for allegedly conspiring to get a handwriting examplar from him, and then not using it. How the plaintiff could thus be damaged is not alleged. And, even applying the "Pandora's-Box Rule" laid down by the Supreme Court as to pleading in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), this Court cannot conceive how he could be injured. He was present at his trial; he was represented by a lawyer; and if an examplar

2. Plaintiff is a "fifth termer." People v. Roberts (1963) 213 Cal.App.2d 387, at 398, 28 Cal.Rptr. 839, at 845.

of his handwriting was needed or important or even useful, he could have given it at any time. No claim for relief is stated in the second cause of action.

In the third "cause of action," the plaintiff names the County Clerk, one of his deputies, the Sheriff of San Bernardino County, all five members of the Board of Supervisors of San Bernardino County, and the Honorable Harold R. Haberkorn, a Judge of the Municipal Court of San Bernardino, and seeks $50,000 in "punitive" damages from each of them, or a total of $500,000 in "punitive" damages, plus $10,000 in "general" damages from Judge Haberkorn. The allegations are woven around Section 825 of the California Penal Code which requires that a defendant be taken before a magistrate within two days after his arrest, excluding Sundays and holidays, and that "[a]ny officer having a prisoner in charge, who refuses to allow any attorney to visit a prisoner when proper application is made therefor shall forfeit and pay to the party aggrieved the sum of five hundred dollars ($500), to be recovered by action in any court of competent jurisdiction."

Nowhere in the complaint does it appear that plaintiff is seeking relief in the within action for failure to be taken before a magistrate within the time required by Section 825, but rather, he asserts that the defendants named in the third "cause of action" conspired and colluded to deny him the sum of $500, being the amount of the penalty set forth in Section 825. It would appear that plaintiff's claim for $500 was first made to the Board of Supervisors of San Bernardino County, and rejected by them, and thereafter suit was filed in the Municipal Court in San Bernardino, and the claim was rejected by Judge Haberkorn, acting in his official capacity. It is of course alleged that all of the parties were acting under color of State law, and therefore all of them were acting in their official capacity.

Judge Haberkorn had immunity for any violation of the Civil Rights Statute by virtue of his position as a Judge. The Board of Supervisors were acting in their official capacity in denying the claim, and they, therefore, have immunity.

It does not appear how or in what way the Clerk of the Court, or his Deputy Clerk, or the Sheriff could possibly be involved in this fantastic claim by the plaintiff.

The third "cause of action" fails to state a claim for relief.

In the fourth "cause of action," the plaintiff names the District Attorney, his deputy who prosecuted plaintiff at the trial, and the Judge who presided over the trial at which plaintiff was convicted of the crime of escape.

The claim in the fourth "cause of action" is that the defendants conspired and colluded against plaintiff to deprive him of equal protection of law and due process of law in that those named therein denied him the right of subpoena for the true and accurate records of one Stephen E. Roberts of Chino, California, which records contained certain x-rays, and that such denial was a suppression of a relevant document or paper, and was in violation of Section 6200 of the California Government Code; and that plaintiff was interrogated concerning prior felony convictions, and that the Judge who presided read to the jury a certain jury instructions. Plaintiff demands $25,000 as "punitive" damages from each of the three named defendants in the fourth "cause of action."

Each of the parties named in the fourth "cause of action" are immune from suit [Rhodes v. Houston, supra; Toscano v. Olesen, supra] for any alleged violation of the Civil Rights Statute or Constitutional provisions. The fourth "cause of action" does not state a claim for relief.

In the fifth "cause of action" plaintiff modifies his demands somewhat in that he seeks only $12,500 as "punitive" damages from each, the Attorney General of the State of California, two Deputy Attorneys General, the three Justices of the District Court of Appeals of the State of California who affirmed plaintiff's conviction on appeal, and one Mazziotta who, it is asserted, was plaintiff's

attorney on appeal, charging a conspiracy among them to deny plaintiff his rights.

It appears from the complaint that Mr. Mazziotta wrote a letter "in lieu of an opening brief" to the District Court of Appeals in which he stated that the plaintiff "herein, had no meritorious grounds for an appeal," and the court ordered that plaintiff could then proceed without counsel.

Attorney Mazziotta was under the solemn duty, under his oath (California Business & Professional Code, § 6067), and under the California Statutes (California Business and Professional Code, § 6068) and the Rules of Professional Conduct of the State Bar of California (California Business & Professional Code, §§ 6067–6077, Rules 13 and 17) to not prosecute an appeal unless it was in good faith, and to not mislead the Court. It must be presumed that he acted in accordance with his oath when he advised the Court that no meritorious grounds of appeal existed. It is highly essential for the public good that the rules prohibiting lawyers from pressing meritless appeals, and from deceiving the Court, either as to fact or law, be rigidly enforced. Any other principle would make the trial of lawsuits mere exercises in sophistry instead of solemn search for truth.

The Attorney General and his Deputies are accused of violating plaintiff's civil rights in that they prepared a brief containing "assumed" facts which the defendant Judges of the District Court of Appeals "warped" for the primary purpose of denying plaintiff his constitutional right to a fair and impartial trial, equal protection of the law, and due process of law.

█ The Justices of the District Court of Appeals, the Attorney General and his Deputies are immune from liability for violation of the Civil Rights Act under the cases heretofore cited.

No claim for relief is stated in the fifth "cause of action."

In the sixth "cause of action," plaintiff accuses six of the witnesses who testified at his trial, the Sheriff of San Bernardino County, the Judge who presided at his trial, and an Officer of the Department of Corrections of the State of California, of "conspiracy and collusion under color of State law, custom or usage, to deny plaintiff" his civil rights in that four of the above-named came into the San Bernardino County jail and looked at plaintiff through a "one-way mirror;" and conspired to lie on the witness stand, and that three of them did commit perjury.

Just how the Sheriff comes into this conspiracy, or the Judge who presided at the trial, does not appear, but in any event, plaintiff demands $30,000 in "punitive" damages from each of the ten persons named in the sixth "cause of action," or a total of $300,000.

The Judge is immune from liability for violation of the Civil Rights Act.

█ It does not appear how plaintiff could in any way have been injured by anyone who looked at him through a "one-way mirror," especially when it appears that the persons so accused were thereafter called to the witness stand to identify the plaintiff.

It affirmatively appears from plaintiff's own pleading, as well as the report of the case [People v. Roberts] in 213 Cal.App.2d 387, 28 Cal.Rptr. 839, that neither the jury nor the District Court of Appeals believed that any of the parties named in the sixth "cause of action" who were witnesses, committed perjury, or lied, or conspired to lie.

If every person who is convicted can sue the witnesses who testify against him for damages for violation of the Civil Rights Act, some other Court besides this one is going to have to say that a complaint of such nature states a claim for relief, and should not be dismissed.

The sixth "cause of action" states no claim for relief.

The seventh "cause of action" names all of the members of the jury who sat on the case, and who unanimously voted for conviction of plaintiff at his trial. Plaintiff seeks $50,000 as "punitive" damages from each of them, or a total of

$600,000, and $14,600 as "general" damages from each, or a total of $175,000, or in all, a total of $675,200 from the jury.

I have found no case which touches on the question of immunity of a jury. Perhaps this is the first case where anyone has had the gall to attempt to secure damages from a jury for convicting him, in alleging violation of his civil rights.

 If anyone should have immunity, it is the jurors. As Justice Frankfurter said in Tenney et al. v. Brandhove (1951) 341 U.S. 367, at 377, 71 S.Ct. 783, at 788, 95 L.Ed. 1019: "The privilege (of immunity) would be of little value if they could be subjected to the costs and inconvenience and distractions of a trial upon a conclusion of a pleader, or to the hazards of a judgment against them based upon a jury's speculation as to motives." There, the court was speaking of immunity of legislators. If ever immunity should be granted, it should be granted to jurors. To permit this case to proceed, and the jurors to be served with summons and complaint, and compel them to hire lawyers, would be the ultimate, not only in absurdity, but also in the subversion of justice.

The seventh "cause of action" states no claim for relief.

There is no diversity of citizenship, so that if any claim of plaintiff might sound in tort (I do not hold that it does), this Court has no jurisdiction under 28 U.S.C. § 1332.

The plaintiff's complaint is frivolous and downright malicious.

Now, therefore, good cause appearing,

It is hereby ordered, adjudged and decreed, of the court's own motion, that the permission for the plaintiff to proceed further without prepayment of fees and costs be, and it is hereby denied, and plaintiff's complaint is dismissed without leave to amend.

SUPPLEMENTAL MEMORANDUM

Agnew v. City of Compton, 239 F.2d 226, was cited in the Memorandum filed February 24, 1964, in the above-entitled case, to the point, among others, that to state a cause of action under the Civil Rights Act, it was necessary that there be allegations that the conduct was in pursuance of a systematic policy of discrimination against a class or group of persons.

Shortly after filing the Memorandum and Order dismissing the Complaint in the above matter, on February 24, 1964, my attention was called to the Ninth Circuit case of Cohen v. Norris, 300 F.2d 24, and the fact that the Court in the Cohen case overruled that holding in Agnew v. City of Compton, supra.

I have again examined the record, and even though the Cohen case was not considered on the above point, no different conclusion than that heretofore reached in the Memorandum and Order filed February 24, 1964, dismissing the Complaint, is warranted or justified.