Donald K. HESS, Appellant,

v.

Olin G. BLACKWELL, Warden, et al.,
Appellees.

No. 25643.

United States Court of Appeals
Fifth Circuit.

March 21, 1969.

Donald K. Hess, pro se.

Theodore E. Smith, Asst. U. S. Atty.,
Atlanta, Ga., for appellees.

Before TUTTLE and SIMPSON, Circuit Judges, and BREWSTER, District
Judge.

PER CURIAM:

Appellant is an inmate of the United
States Penitentiary, Atlanta, Georgia.
He filed in the court below a "Motion
for Restraining Order" seeking to have
prohibited the alleged use by prison
guards of a "fluoroscopic and stationary
X-ray machine" upon himself and other
prisoners in the conduct of searches for
contraband material when such prisoners
enter or leave the institution. He asserted that the machine is negligently used
by untrained personnel and causes or is
likely to cause radiation burns and other
injuries.

The trial court on October 13, 1967,
denied the motion without an evidentiary
hearing, for failure to exhaust administrative remedies, and later, on November
13, 1967, denied a "motion to renew (sic)
judgment". A later "motion to reinstate" was denied December 7, 1967.
This appeal followed.

The "motion to renew" judgment contained the following allegations:

"In the court's order, it is stated
relief must be through administrative
channels. The petitioner avers he has
wrote two letters in relation to the
above, to the following: Attorney
General, Mr. Ramsey Clark, Department of Justice, Washington, D. C.,
without a reply."

This was an allegation of at least an attempt to secure relief administratively. The "motion to renew" also made clear that the appellant based his application upon the Eighth Amendment's ban on "cruel and unusual punishment".

Apparently not brought to the attention of the district court was a purported letter dated May 25, 1967, from the appellant-petitioner to the Director of the Bureau of Prisons complaining of searches by use of the hospital x-ray machine and the danger of overexposure to radiation. A copy of this letter appears as an appendix to the appellant's brief in this Court. The brief asserts that appellant's complaints were never answered. If such a letter was sent, it also indicates an attempt to pursue the appellant's complaint through administrative channels.

We agree with the district court that since the management and regulation of federal penal correctional institutions is by statute delegated to the Bureau of Prisons under the direction of the Attorney General * resort must be had in the first instance to these officials. Green v. United States, 3 Cir. 1960, 283 F.2d 687.

But, if the appellant's assertions are true, he had sought relief through administrative channels before bringing his complaint into the district court. Until the district court tests these allegations by proof at a plenary hearing, it is impossible to determine whether or not administrative remedies have been exhausted. Unlikely as it may appear that responsible prison officials permit the use of potentially dangerous equipment, the appellant is entitled to a day in court to try to prove the truth of his allegations provided available adminis-

trative remedies have been exhausted. Accordingly, we reverse and direct that the district court vacate its prior judgment, and determine whether or not available administrative remedies have been exhausted. If so, that court should then conduct an evidentiary hearing and make appropriate findings with respect to appellant's allegations of deprivation of Eighth Amendment rights.

Reversed and remanded.

BREWSTER, District Judge (dissenting).

I respectfully dissent.

The record in this case in the court below consisted only of three motions[1] and a notice of appeal filed by appellant and of the court's orders in regard thereto. Each time appellant filed a motion, the court was of the opinion that it was apparent from the face thereof that appellant was not entitled to the relief sought, and entered an order denying it without an evidentiary hearing.[2] The appeal in forma pauperis came to this Court on appellant's pleadings and notice of appeal[3] and the three orders of the trial court dated October 13, November 13 and December 7, 1967, respectively. All papers filed by appellant in the trial court, as well as his briefs here, appear to have been prepared without legal help. The summary of his alleged facts and claims that follows is taken from those instruments filed by him, some of it by quotation.

At the time in question, appellant was a convict in the federal penitentiary at Atlanta, Georgia. He was also facing trial in the United States District Court in that city on a charge of attempt to escape from federal custody. It was the policy of the institution to require "in-

---

* Title 18, U.S.C., Secs. 4001 and 4042.

1. While the appellant styled all of his pleadings "motions", the first one was in fact his complaint. The two subsequent ones filed after the entry of the order denying the first one were motions for new trial, but he styled them "Motion to Renew Judgment" and "Motion to Reinstate", respectively.

2. The court did grant the alternative plea in the last motion for leave to appeal in forma pauperis.

3. The appeal was from the order of November 13th overruling the first motion for new trial. The order of December 7th allowed the appellant to appeal in forma pauperis.

**364**

mates listed as security risk" to pass before a machine as they left from or returned to the prison during periods they were attending court on writs, either as defendants or as witnesses, for the purpose of detecting any weapons or other contraband articles concealed on their persons. The sixteen inmates listed as security risks at the time included the appellant and two men he intended to call as witnesses in his behalf in his pending criminal case. The penitentiary officials regarded the device in issue as a fluoroscope machine. The appellant, however, after having read several magazine articles "concerning X-ray Exposure", decided that the machine was "a stationary high power X-ray, death device." He claimed that the personnel using it was untrained in taking X-rays, and that the repeated use of it was likely to cause radiation burns and other injuries. He expected to be subjected to check by the machine as he went to and from court for his trial. His two prospective witnesses were refusing to go to court for him on account of their fear of the machine. There was no allegation that he had applied for any process to compel their attendance.

The piecemeal pattern which is so common when pleadings are prepared by convicts resulted in three stages of proceedings in the trial court: (1) "Motion for a Restraining Order" and a court order dated October 13, 1967 denying it. (2) "Motion to Renew Judgment" and

a court order of November 13, 1967 refusing it. (3) "Motion to Reinstate and/or Notice of Appeal"[4] and a court order of December 7, 1967 overruling the motion except for the portion requesting leave to appeal in forma pauperis. The trial court denied each of the motions on the ground that it failed to show that the appellant's administrative remedies had been exhausted.[5]

The majority opinion agrees that the law required the appellant to allege that he had exhausted his administrative remedies before he could maintain this suit attacking the management and regulation of the institution where he was confined. It says, however, that "if appellant's assertions are true, he had sought relief through administrative channels *before* bringing his complaint into the district court. * * *" (Emphasis supplied). For that ground to be valid, the record from the court below must show not only that appellant had sought administrative relief, but that he did so within sufficient time before the filing of this action to give the authorities a reasonable opportunity to act upon his complaint. In my opinion, that record shows neither requirement.

The correctness of the denial of the "Motion for a Restraining Order" is not questioned, as that motion contained no reference to any effort to get administrative relief through the Attorney General or the Bureau of Prisons. The only

4. The "Motion to Reinstate" added nothing. It was filed after the order of November 13, 1967 overruling the "Motion to Renew Judgment", from which this appeal was taken. It alleged merely that the equipment in question was not a fluoroscopic machine, but "a stationary, high power X-ray, death device", and attached as an exhibit one of the magazine articles appellant had read about the danger of excessive use of X-ray. The motion contained no reference to any attempt to get relief through administrative channels. It prayed in the alternative for leave to appeal in forma pauperis, and that request was granted. The majority opinion attaches no importance to this "Motion to Reinstate", and it will not be discussed further.

5. The grounds for denying the first two motions appear in the following quotation from the second order of the court (November 13, 1967):
"As pointed out in the previous order, the use of any device or method for the safekeeping of the prisoners within the prison, is a matter of discretion with the Attorney General and Bureau of Prisons. Title 18 U.S.C.A. Sect. 4042; Williams v. Steele, 194 F. 2d 32, rehearing denied 194 F.2d 917, cert. denied 344 U.S. 822 [73 S.Ct. 20, 97 L.Ed. 640]. If a prisoner objects to the use of the fluoroscopic device, in the first instance, he must process his complaint through administrative channels, and until such administrative remedy is exhausted, the district court is

mention whatever in any part of the record in the court below of any contact by the appellant with such authorities appears in the following paragraph of the first motion for new trial, filed after the entry of the order of October 13, 1967: "In the Court's order it is stated relief must be through administrative channels. The petitioner avers he has wrote two letters in relation to the above, to the following: Attorney General, Mr. Ramsey Clark, Department of Justice, Washington, D. C., without a reply."

This allegation, when taken in context, is not sufficient to discharge appellant's burden of showing affirmatively that he had exhausted his administrative remedies. There is no way to tell from such allegation what his complaint to the administrative authorities was, whether "in relation to the above" refers to the preceding sentence or to all of the motion preceding the statement.[6] Neither construction would satisfy the requirement laid down in Vida v. Cage, 6 Cir., 385 F. 2d 408 (1967), that petitioner's pleadings

must affirmatively show that the complaint made to the administrative authorities was the same as that set forth in his court action. Any judge who has served on the federal bench would know the reason for that rule after seeing the way convicts juggle the grounds set out in a series of instruments prepared for themselves or for fellow prisoners. In addition, the Prisoners' Mail Box Regulation discussed in footnote 5 says that all inmates may use the box to write the Attorney General, The Bureau of Prisons, and certain other listed officials "regarding any problem of *importance* which they believe cannot be solved through the assistance of institutional personnel or by utilizing regular mail channels." The prison system could not function if it had to investigate obviously meritless protests of the many malcontents and misfits among its inmates. A charge ought to have some semblance of reality before it could be expected to provoke action. A complaint based on the weird gobbledygook about the "red-

---

without jurisdiction to entertain the application for relief. Green v. United States, 283 F.2d 687 (3 Cir. 1960); Stroud v. Swope, 187 F.2d 850 (9th Cir. 1951)."

Green v. United States, cited in the trial court's order, says of this remedy: "In addition, appellant has failed to exhaust his administrative remedies. Under regulations promulgated by the Bureau of Prisons, there is available to all prisoners, the right of the 'Prisoner's Mail Box.' This procedure sets up an effective means of review of actions of local prison authorities. * * *" The regulation is quoted from in Green v. United States, supra, and Lowe v. Hiatt, D.C.M.D.Pa., 77 F.Supp. 303, 305 (1948). See also Heft v. Parker, D.C.M.D.Pa., 258 F. Supp. 507 (1966); and Murphy v. Surgeon General, D.C.Kan., 269 F.Supp. 227 (1967). As indicated in Graham v. Willingham, 10 Cir., 384 F.2d 367 (1967), a regulation of the Bureau of Prisons is called a "Policy Statement". The regulation relative to the Prisoners' Mail Box at the time appellant initiated his grievance was Bureau of Prisons Policy Statement 7300.2.

6. All of the allegations in "the above" of the "Motion to Renew Judment" read:

"Comes now the petitioner, pro se and moves this court to renew the judgment entered in this case on 16th day of October, 1967, for the reasons set forth below.

"The jurisdiction of this court is involved pursuant to the United States Constitution, Amendment VIII, and among others.

"'* * * nor cruel and unusual punishment inflicted.'

"In the days, of the Star Chamber Courts, it was quite common for punishment to be every thing short of death, i. e., pillory, whipping, branding and mutilation were its modest prerogatives. The early history of this country saw some of the same. With the ratification of the Amendments of 1790, one would think such cruelty of the red-hot iron test, whipping, cutting ears off, would stop. But as man came into the twentieth century, the courts are still asked to review and view new violations of the 8th Amendment. 'Cruel and unusual punishments.'

"There are certain expansions of the 8th Amendment today (as this court must be aware of) that would be equally logical with present interpretations, to rule that over radiation exposure can disembowel one, as sure as a knife."

hot iron test", etc., contained in "the above" to which the allegation in question referred could hardly be classed as a "problem of importance" in the present setting. I cannot see enough semblance of merit in it to call for administrative action.

Even if appellant's allegations in his motion for new trial were otherwise sufficient, they would still be inadequate for failure to show that his complaint was lodged with the administrative authorities long enough ahead of the filing of this suit to afford them a reasonable opportunity to take action. There is no allegation as to when it was made. As for as the record in the trial court goes, it could have been the day before the institution of this action. The majority opinion attempts to supply this deficiency by reference to a copy of a purported letter from appellant to the Attorney General which is attached to appellant's brief filed in this Court. The opinion says that the letter was "apparently" not brought to the attention of the trial court. From the record we have before us, we must say that it was not. The appellant makes no claim that it was. It does not appear as an exhibit to any of the pleadings. It does not show to have been filed in the court below. No evidence was offered. How could it have

come to the attention of the trial court? If it is not part of the record from the court below, then it has no more business before this Court than the statement in the appellee's brief that the appellant's confinement in the federal penitentiary is on account of two life sentences. We have no right to consider it.

To summarize, we have a case before us where no one claims that the trial court's first judgment was incorrect. The appellant filed a motion for new trial attempting to supply an admitted deficiency in his original complaint. None of the requirements that we would ordinarily expect of such a motion, such as showing that the inadequacy of the original complaint was not due to lack of diligence, were met. This belated attempt was inadequate for two sound reasons. The majority opinion has considered a matter not in the record of the court below to meet one of them.

This is a civil proceeding, and it is my opinion that the appellant should have no more rights than any other litigant just because he is a criminal claiming that his wants are constitutional rights.[7] I think that he should be held to the same degree of accountability in a civil proceeding as would be expected of an humble, honest, hardworking, good citizen of equal educational opportunity attempting

7. The appellant claims that the conduct he is protesting is prohibited by the cruel and inhuman punishment clause of the Eighth Amendment. Without any serious consideration of the validity of this contention, the majority opinion says that on remand the trial court should make appropriate findings "with respect to appellant's allegations of deprivation of Eighth Amendment rights." I cannot agree that the conduct complained of comes within the purview of the Eighth Amendment, but will not discuss the matter at length because I believe that, aside from such amendment, a prison inmate has a remedy under the equitable and statutory powers of the federal court to get relief from wrongful abuse of his person by employees of the penal system to which he is committed. See 28 U.S. C.A. § 1361 and 42 U.S.C.A. § 1983. It may have been assumed or taken for granted in some decisions of federal appellate courts, as it is in the majority

opinion here, that all misconduct of prison employees towards inmates in the administration and discipline in their institution comes within the cruel and inhuman punishment clause. I have been unable, however, to find a case that so held where that question was actually put in issue. The Supreme Court has not passed on it; but in the recent case of Powell v. Texas, 392 U.S. 514, 531, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254, 1257 (1968), it said:

"* * * The primary purpose of that clause has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes * * *."

The fluoroscopic check here complained of had nothing to do with the kind of punishment imposed for violation of any criminal statute. It was merely a search conducted as an incident to the security and discipline of the institution.

to represent himself. I have been unable to find a case where such a citizen has been accorded the latitude which has been extended the appellant here.

The position taken in this dissent is not strained or hypertechnical, any more than are the holdings in Vida v. Cage, supra, Weller v. Dickson, 9 Cir., 314 F.2d 598, 602 (1963), Carey v. Settle, 8 Cir., 351 F.2d 483, 484 (1965), and the other cases cited herein. The courts recognize that there must be some sort of restraint on the draftsmen of pleadings in litigation, even when they are drawn by a member of a profession which screens for good character. Rule 11, F.R.Civ.P., makes a lawyer responsible for pleadings he signs, and gives the courts strong disciplinary powers over one who wilfully files a pleading containing scandalous or indecent matter or allegations he knows or has reason to believe are not true. Convicts preparing or filing pleadings have no restraints or inhibitions. As Judge Duniway said in Weller v. Dickson, supra, 314 F.2d, at page 602, the courts know that imprisoned felons will "not hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court." The courts also know that suits by inmates against prison personnel "are too frequently mere outlets for general discontent in having to undergo penal restraint or of personal satisfaction in attempting to harass prison officials." Carey v. Settle, supra, 351 F.2d, at page 484. The requirement that convicts show that they have exhausted their administrative remedies is bound to have some deterrent effect on the making of unfounded claims. It does away with the idea of a quick, automatic trip outside the penitentiary. It makes them go to experts who know prison problems and should be hard to fool. If the matter is important enough to require investigation, and if it has merit, it will likely be worked out on the institutional level. If it is false or frivolous, the convict will realize that the prison authorities will be ready with their proof. Enforcement of the rule that a convict must affirmatively plead that he has exhausted his administrative remedies before he can maintain a lawsuit is the only restraint courts have to prevent a flood of cases such as this one, having no justiciable basis or impressing reality.[8] Clogging of court dockets with frivolous and fraudulent actions by convicts is not the only bad consequence of laxity in the enforcement of such rule. " * * * The disruption of prison discipline that the maintenance of such suits, at government expense, can bring about is not difficult to imagine." Weller v. Dickson, supra, 314 F.2d, at page 602.

I would affirm.

---

In Startti v. Beto, 5 Cir., 405 F.2d 858 (January 1969), a convict sought equitable relief to require the authorities of his prison to cease and desist from cruel and inhuman punishment of him. He alleged that he was in solitary confinement on bread and water, and had been for nine days. In affirming the dismissal of the complaint, this Court said: " * * * The petitioner's complaint does not rise to the constitutional level but deals with matters of prison discipline solely the concern of the state."

8. Carey v. Settle, supra. 351 F.2d, at p. 485.