Don Victor HARBOLT, Jr., Petitioner,

v.

Noah L. ALLDREDGE, Warden, Respondent.

No. 70–114 Civ.

United States District Court,
W. D. Oklahoma.

April 13, 1970.

Don Victor Harbolt, Jr., pro se.

William R. Burkett, U. S. Atty., John E. Green, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

## ORDER

DAUGHERTY, District Judge.

Petitioner has filed herein: (1) Application for Writ of Habeas Corpus.

(2) Request for leave to proceed in forma pauperis. (3) Motion for the appointment of counsel to represent Petitioner in a civil suit against Respondent and the United States. (4) Motion for injunction restraining Respondent from requiring Petitioner to work with certain personnel of the prison in which he is incarcerated. (5) Motion for an order directing the Respondent to (a) allow Petitioner the use of a typewriter, (b) allow Petitioner to correspond with the Criminal Law Association, (c) refrain from placing Petitioner in the "hole" for more than four days, and (d) refrain from transferring Petitioner to another institution.

The Respondent, through the United States Attorney for the Western District of Oklahoma, has responded to Petitioner's various applications and motions, denying the allegations therein and requesting that they be denied in all respects and dismissed.

Petitioner alleges in support of his Application for Writ of Habeas Corpus that he is being subjected to cruel and unusual punishment by the Respondent because he is being forced to be an accessory to various dishonest activities in the course of his work assignment at the El Reno Federal Reformatory. Petitioner alleges that he is clerk to the Chief Engineer and that this person has carried on the following dishonest activities: (1) Defrauding a car insurance company. (2) Using federal telephones for personal long distance calls. (3) Using inmate labor to construct amateur radio equipment for his personal use. (4) Theft or conversion of electronic parts.

With respect to Petitioner's application to proceed in forma pauperis, the Court has previously granted the application.

In support of his request for appointment of counsel in a civil suit against the Respondent and the United States, Petitioner claims that he is being subjected to cruel and unusual punishment as described in his Application for Writ of Habeas Corpus, that he has suffered mental anguish, and that he is a pauper.

In support of his Motion for an order enjoining Respondent from forcing Petitioner to work with the Chief Engineer mentioned above, Petitioner states that the order is necessary to prevent his cruel and unusual punishment as described in his Application for Writ of Habeas Corpus.

In support of his Motions relating to the use of typewriters, mailing privileges, disciplinary confinement and transfer, Petitioner states that a protective order is necessary to prevent prison officials from taking retaliatory action against him as a result of this suit.

In opposition to Petitioner's claims, Respondent states that Petitioner presents no grounds on which relief may be granted, for the following reasons: (1) Petitioner does not attack the illegality, if any, of the sentence by whose authority he is presently confined, and the remedy of Habeas Corpus is available only against illegal confinement. (2) The federal courts have no power to interfere with the conduct of a prison nor with prison discipline. (3) The measures taken by Respondent in Petitioner's case are neither arbitrary nor capricious.

Petitioner alleges that he has exhausted the administrative remedies available to him within the prison by applying to Respondent, Petitioner's caseworker, both Associate Wardens, the Assignment Officer, and an officer of the Federal Prison Industries, Inc.

For various reasons, enumerated following, Petitioner has failed to make out a case cognizable in this Court. In disposing of Petitioner's case, the Court has taken all Petitioner's pleaded facts as true, as it is required to do when confronted with Respondent's request for dismissal.

Petitioner has failed to exhaust his administrative remedies. Respondent has submitted a letter from the Bureau of Prisons, United States Depart-

ment of Justice, which states the following:

> " * * * There are three steps which an inmate should follow in exhausting his administrative remedies.
>
> "He should first take his problem to the Superintendent of Industries at El Reno * * *. If his problem is not solved at this level, he should take the problem to the Associate Wardens * * * or to the Warden. * * *
>
> "Finally, if a problem cannot be solved at the institution level, the inmate is free to write uncensored through the Prisoners Mail Box either to the Acting Commissioner of Industries and Acting Director of the Bureau of Prisons * * * or to the Associate Commissioner of Industries * * *."

While Petitioner alleges that he has complied, in essence, with the first two steps of the outlined procedure, there is no indication that he has brought his complaints to the attention of any Bureau of Prisons personnel outside the institution. In cases of this kind, a prisoner is required to first exhaust his administrative remedies. Hess v. Blackwell, 409 F.2d 362 (Fifth Cir. 1969). The dissent's observation as to the reason for this requirement is worth repeating here:

> "The requirement that convicts show that they have exhausted their administrative remedies is bound to have some deterrent effect on the making of unfounded claims. It does away with the idea of a quick, automatic trip outside the penitentiary. It makes them go to the experts who know prison problems and should be hard to fool. If the matter is important enough to require investigation, and if it has merit, it will likely be worked out on the institutional level. If it is false or frivolous, the convict will realize that the prison authorities will be ready with their proof. Enforcement of the rule that a convict must affirmatively plead that he has exhausted his administrative remedies

before he can maintain a lawsuit is the only restraint courts have to prevent a flood of cases such as this one, having no justiciable basis or impressing reality. Clogging of court dockets with frivolous and fraudulent actions by convicts is not the only bad consequence of laxity in the enforcement of such rule. ' * * * The disruption of prison discipline that the maintenance of such suits, at government expense, can bring about is not difficult to imagine.' Weller v. Dickson, supra, 314 F.2d [598], at page 602." 409 F. 2d at p. 367.

■ Next, Petitioner has failed to state facts which, as a matter of law, constitute cruel and unusual punishment. The scope and meaning of cruel and unusual punishment is extensively discussed in Jackson v. Bishop, 404 F.2d 571 (Eighth Cir. 1968) at pp. 577–579. In a case where, as here, no allegation of physical injury nor departure from accepted methods of prison discipline were made, it was held that the Eighth Amendment could not be invoked. Wright v. McMann, 257 F.Supp. 739 (N.Y.1966). Moreover, Petitioner fails to allege that the Respondent is in any way responsible, either in his official capacity or otherwise, for the activities of the Chief Engineer, or that Petitioner was forced to participate in them in some manner. Petitioner's claim that he was forced to be an accessory to the allegedly illegal activities of the Chief Engineer is a bald conclusion, and does not show in what way, if any, Petitioner was connected with them.

■ With respect to Petitioner's request for appointment of counsel, not, apparently, to assist him in this proceeding, but to assist him in bringing a civil action against Respondent and the United States, there is no such action pending and, even if it were pending, the Court, on the basis of the facts presented by Petitioner would in any event, in its discretion, deny the request. 28 U. S.C.A. § 1915; Weller v. Dickson, 314 F.2d 598 (Ninth Cir. 1963).

With respect to Petitioner's other requests and motions, it is sufficient to say that, as the matters with which Petitioner's requests and motions deal relate to ordinary and routine prison administration, this Court will deny the relief requested by these motions and requests. Petitioner has made no showing of the extreme circumstances which would justify the interference of this Court in the administration of the El Reno Reformatory. Graham v. Willingham, 384 F.2d 367 (Tenth Cir. 1967); Cannon v. Willingham, 358 F.2d 719 (Tenth Cir. 1966); Stroud v. Swope, 187 F.2d 850 (Ninth Cir. 1951).

Petitioner's various Applications, Motions and Requests presented by Petitioner are denied and Petitioner's action is hereby dismissed.

It is so ordered this 13 day of April, 1970.

### SUPPLEMENT TO ORDER

On the same day that this Court entered an order and judgment denying Petitioner relief, Petitioner submitted a response claiming that Respondent may not transfer him to another institution and cites Rule 23(a), F.R.App.P., 28 U.S.C.A., as authority for that proposition in connection with his Motion for, among other things, an order restraining Respondent from transferring him. The Court, therefore, enters the instant Supplement to its Order of April 13, 1970, denying Petitioner this relief.

Petitioner's reliance on the cited Rule affords him no basis for relief. In the first place, Respondent has no authority to transfer Petitioner. The exclusive power to transfer a prisoner is in the Attorney General of the United States, 18 U.S.C.A. § 4082(a) and (b); Lawrence v. Willingham, 373 F.2d 731 (Tenth Cir. 1967). In the second place, the Rule itself provides that "* * * a person having custody of a prisoner shall not transfer custody to another unless such transfer is directed in accordance with the provisions * * *." of the Rule. Thus, unless and until Petitioner is actually transferred by the Attorney General without compliance with the Rule, he has no standing to complain of a violation of either Rule 23(a) or (b), F.R.App.P., 28 U.S.C.A., inasmuch as no violation has yet occurred.